## Monroe v. Bailey, et al.

(Decided December 13, 1911.)

### Appeal from Mercer Circuit Court.

1. Specific Performance—Contract for Sale of Land—Plea that Contract was not Binding—Evidence.—In an action to enforce specific performance of a written contract for the sale of land, a plea by the purchaser that the contract was signed with the agreement that it was not to be binding, must be supported by clear and convincing evidence, and where the evidence fails to come up to this requirement, the finding of the chancellor against such plea is proper and will not be disturbed.

2. Same—Delivery—Agent.—A delivery of a contract for the sale of land to the vendor's agent is sufficient.

3. Deed—Tender.—When the contract of sale provides for the delivery of the deed not later than June 20th, a tender on June 21st, is sufficient, where the vendor's agent called at the purchaser's home on June 20th with the deed and searched for him all afternoon, and was unable to find him, though he was in the vicinity of his home, and it appearing that time was not of the essence of the contract.

4. Principal and Agent—Parol Authority—Sale of Land—Agency of Husband.—Where husband and wife are joint owners of a tract of land, and the husband is authorized by his wife to sell the land, a contract between him and the purchaser and signed by him

alone without disclosing his agency, will bind them both, as his agency and authority may be established by parol evidence.

E. M. HARDIN, ROBERT HARDING & E. V. PURYEAR for appellant.

E. H. GAITHER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, J. R. Bailey, and Mildred E. Bailey, his wife, brought this action against appellant, T. J. Monroe, for specific performance of a written contract for the sale of a tract of land containing about two hundred and eighty-three acres. Upon the admission of the case, the chancellor awarded appellees the relief prayed for, and Monroe appeals. The contract was dated May 7, 1910. The contracting parties were John R. Bailey and appellant, T. J. Monroe, and the contract was signed by each of them. The consideration to be paid was $35,000, of which $7,000 was to be paid on the delivery of the deed, and $500 of the $7,000 was paid by a check as earnest money but was to be credited upon the payment to be made when the deed was delivered; and $14,000 was to be paid by assuming a mortgage on the land held by an insurance company. The remainder was to be paid in 1, 2, 3, 4 and 5 years from the date of the deed, for which five notes were to be executed. The contract also contained certain stipulations in regard to wheat and some other things on the farm. The deed was to be made to Monroe not later than June 20, 1910. The petition, after setting forth the execution and terms of the contract, alleged that appellees duly signed, acknowledged and tendered to appellant a deed to the land on June 21, 1910, and that appellant refused to accept it. The petition also charged that on June 20, 1910, appellees' agent, between the hours of twelve and eight o'clock p. m., visited appellant's home and made a diligent effort to find him, but was unable to do so because he was either absent from home or concealed himself so that the agent could not find him to make a tender of the deed. It was also charged in the petition that appellee, J. R. Bailey, was fully authorized by his wife, Mildred Bailey, to make the contract on her behalf. Appellant's demurrer to the petition was overruled. He then answered denying

the allegations of the petition and pleaded that the con-
tract was never mutually agreed upon by appellant and
appellees; that it was signed by them with the agreement
that neither of them was to be bound by it, and that it
was never delivered by either of them to the other. He
also pleaded that after the contract was signed it was
held by a real estate agent who knew it was signed at his
request and that it was agreed that it should not be bind-
ing on either of the parties thereto. Appellant also de-
fended upon the ground that Mildred Bailey, the wife of
J. R. Bailey had not signed the contract and that no deed
was ever tendered to him until after June 20, 1910. The
answer also contained the additional defense that the
contract was abandoned by the parties.

The evidence for appellees is to the effect that they
are the joint owners of the land in controversy; that on
the day the contract was entered into, the terms of it
were discussed and all embraced in the written contract
sued upon; that J. R. Bailey had authority from his wife
to make the contract; that at the time it was signed ap-
pellant executed to appellees a check for $500 as earnest
money. This check, though executed on the 7th, was
dated May 10th. After the check and contract were
signed they were delivered to Mr. Poteet, who was act-
ing as appellees' agent in making the sale. After the
contract was signed, appellant wanted to know if appel-
lee would give him the option for January 1st instead of
June. J. R. Bailey replied that he would see Col. Gaither
and ascertain if it was legal. The parties were engaged
in making the trade from about noon until sundown. On
Tuesday morning the parties met at Col. Gaither's and
he had the contract drawn with the change desired by
appellant, but appellant declined to execute it; and suit
was, therefore, brought upon the contract in question.
On June 20th, W. J. Poteet, appellees' agent, went to the
residence of appellant in Mercer county with a deed
drawn in accordance with the contract, which was signed
and acknowledged by J. R. Bailey and Mildred Bailey,
for the purpose of tendering it to appellant. The agent
was informed that appellant was not at his residence
but was on some part of his farm. The agent sought ap-
pellant at that point and found his horse and buggy
hitched there but was unable to find appellant. He re-
turned to appellant's house and spent the entire after-

noon searching for him but could not find him, and about dark returned to his home.

The evidence of appellant and his nephew, Corn, is to the effect that during the time that Poteet was preparing the contract and before it was signed, Bailey told appellant he would not be bound by any contract unless his attorney prepared or approved it; that some one then went to the telephone and called Mr. Gaither, but was unable to get him.

Appellant and Bailey then signed the contract with the understanding and agreement that it was not binding or complete, but that they were to return the following Tuesday when a proper contract would be prepared under the directions of Bailey's attorney. On cross-examination, appellant admitted that he agreed to the provisions in the contract which he signed, but stated that he wanted the privilege of taking possession either in June or January, and that to this extent the parties did not agree upon the contract. Appellant also stated that he was at his home and out in his tobacco patch on the afternoon of June 20th, when Mr. Poteet claims to have called there, and that he never hid himself nor sought in any way to avoid the tender of the deed. Appellant also testified that the reason he did not sign the contract prepared by Col. Gaither on Tuesday was that J. R. Bailey's wife's name was not signed to the contract and he did not consider it binding. He also testified that on that occasion Mr. Poteet told him that if he did not sign the new contract he would not get the land. Mr. Demaree testified that Mr. Poteet told him Mr. Bailey would not accept the contract until his lawyer looked over it. Mr. Bailey admitted that after the execution of the contract, he attempted to sell the land to others, but said that he did this on the advice of his attorney who told him that as appellant had refused to take the land he could sell it to some one else. Our attention is also called to certain statements made by Bailey and Poteet in their testimony to the effect that Mr. Bailey said he did not want a binding contract unless his lawyer did the writing. A careful reading of their testimony, however, convinces us that these statements were not made with reference to any alteration of the contract. In other words, if the contract was to be altered, Bailey wanted his attorney to make the alteration or approve it.

In a case of this kind where a party seeks to avoid

liability on a written contract on the ground that when he and the other parties thereto signed it, they agreed that neither was to be bound but that they were to meet on a subsequent day and draw up another contract, the evidence in support of such a plea must be clear and convincing. Appellant's evidence does not come up to this requirement. It is not probable that two men would sign a written contract involving a sale of a farm for the large sum of $35,000 merely for the convenience of a real estate agent and without any intention of being bound thereby. Considered in the light of all the facts and circumstances, it is much more reasonable to suppose that the contract was actually consummated, but that it was suggested that a change be made therein with regard to the time of possession and it was in reference to this change that Bailey desired the approval of his attorney.

To hold the present contract not enforcible on the ground that the signers did not intend to be bound would be to adopt a rule that would rob written contracts of their efficacy and enable the parties thereto to escape liability whenever they desired. We conclude that the chancellor's finding was correct.

As the contract in question was signed by appellant and delivered to Mr. Poteet, Bailey's agent, it was, in effect, a delivery to Bailey.

Under the facts of this case, we are not disposed to hold that time was the essence of the contract, but are of the opinion that the tender of the deed on the morning of June 21st was sufficient.

It is insisted, however, that as Mrs. Bailey was not a party to the contract and did not sign it, she was not liable thereon. The law is well settled in this State that parol authority to sell land is sufficient (Whitworth v. Pool, 29 R., 1104), and the evidence in this case shows that Mrs. Bailey authorized her husband to make the sale. While it is true that J. R. Bailey alone was the contracting party and he signed the contract in his own name without indicating his agency, yet, we conclude that his agency could be established by parol testimony and when established the contract was binding upon his wife as well as himself. This precise question was before the Supreme Court of Indiana in the case of Tewksbury v. Howard, et al., 138 Ind., 103. In that case L. L. Howard, one of the joint owners of a tract of land, alone signed

the contract of sale. In discussing the question that court said:

"It will be observed that the contract is signed by L. L. Howard, and not by Jane, Samuel, Harvey, Robert G., Thomas B. and William Howard, who are appellees, and were, with the appellee, Lewis L. Howard, plaintiffs in the circuit court. This fact is said to vitiate the contract under the allegations of the several paragraphs of the complaint, that at the time of the making of said contract all of the appellees owned said lands. But it was further alleged that the contract was executed by said Lewis L. Howard as the authorized agent for and on behalf of his co-appellees, and in denial of the force of this allegation appellant asserts that the contract was required to be in the name of the principals, and to disclose the relation of the agent to the contract, and that the true relation could not be shown by parol. This contention has been held to be unavailing in a case involving this exact question. Roehl, Admr. v. Haumesser, 114 Ind., 311. See, also, in addition to the authorities cited in the case last referred to, the case of Briggs v. Munchon, 56 Mo., 570.

"It may be regarded as doubtful if the appellant should be permitted to deny the authority of the agent or the existence of the agency, since it was made to appear further that the appellees executed sufficient deeds of warranty to the appellant, and not only tendered them, but took them into court with their complaint."

Judgment affirmed.