## Thompson et al. v. Fairleigh et al.

March 23, 1945.

Charles G. Middleton, Bullit & Middleton, and W. E. Rogers, Jr., for appellants.

Trimble & Trimble, White & Clark, S. Pettus White, H. W. Linton, and Woodward, Dawson, Hobson & Fulton for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

This case involves the interpretation of Articles of Incorporation of Bass & Company, located in Hopkinsville, as they relate to the call for retirement of preferred stock, and the right to certain dividends.

The corporation was organized as of July 1, 1925,

with a capital of $150,000, divided equally between common and 7% cumulative preferred stock. In 1937 the capital was increased by $50,000 of "Common Stock B," only a part of which, however, was issued. It confirmed all the rights of the preferred stock and the issue is of no importance in this case. Sometime before this controversy arose, the company had purchased and cancelled 87½ shares of the preferred stock, so that only 662½ shares are outstanding. In September, 1942, a majority of the owners of the common stock voted to retire the preferred stock at $110 per share, plus accrued dividends. The book value is much greater. The preferred shareholders deny their power to do so, claiming that it was lost by the failure to call the stock on a specific date, namely, "at the end of five years" from July 1, 1925. The circuit court so declared the rights of the parties. The common stockholders bring an appeal from that judgment, and the preferred stockholders prosecute a cross-appeal from so much of the judgment as declares they are not entitled to a special dividend of 17½% to equalize them with dividends paid the common stockholders. They also present the question of other rights in the accumulated earnings of the company should this court hold the power to retire their stock existed.

The provision in the Articles of Incorporation for the retirement of the preferred stock is as follows:

"The owners of a majority of the outstanding common stock may, by a majority vote, retire the whole or any part of the preferred stock, at the end of three years from this date, at a price of $115.00 per share, together with any accrued dividends not theretofore paid thereon, or at the end of five years from this date, the whole or any part of said preferred stock may be so retired, at a valuation of $110.00 per share, together with any accrued and unpaid dividends on such preferred stock."

The decision, therefore, turns upon whether the phrase "at the end of five years from this date" is to be construed as meaning June 30, 1930, or a reasonable time thereafter, and no other, as the circuit court declared, or as meaning at any time after five years shall have ended.

Except as prohibited by public policy or a statute,

the powers, rights and privileges which may be attached to preferred stock are limited only by the ingenuity of the organizers or the stockholders and the necessities of the corporation. It is primary law that the charter of a private corporation constitutes a contract between it and its stockholders and also between the stockholders inter se. 13 Am. Jur., Corporations, Sec. 79. It is the source of all right and consequently describes the limits thereof. A valid contractual obligation or right, as the case may be, to retire or redeem preferred stock is binding on both the corporation and the stockholders. Fletcher, Cyc. of Corporations, Secs. 5295, 5300; 18 C. J. S., Corporations, sec. 278; Westerfield-Bonte Company v. Burnett, 176 Ky. 188, 195 S. W. 477; Smith v. Southern Foundry Company, 166 Ky. 208, 179 S. W. 205. The terms of the provision for retiring preferred stock must be strictly complied with. Thompson on Corporations, page 434. The question we have is resolved into one of ascertaining the intention of the parties, for the charter is to be construed as any other contract. In this case the litigants are the original parties or the executors or trustees of three of them who subsequently died, so that the rule of ascertaining the intention is the more realistic in its application than perhaps it would be were there numerous parties whose interests were remotely acquired.

The articles of incorporation expressly provide for the call or retirement of the preferred stock upon two dates. One at the end of three years and the other at the end of five years "from this date," that is, on June 30, 1928, and June 30, 1930. The history of the corporation is that it was formed to purchase the planing mill and lumber department of another company in which the subscribers to the common stock were interested either as part owners or employees. The holders of the preferred stock were to have no control in the management except upon certain defaults. They assumed a financial risk in entering into the business venture, so after it became prosperous and the preferred stock became much more valuable than the callable price—perhaps double—they ought not to be strictly dealt with.

The provision for calling or retiring preferred stock is not unilateral as a matter of law (Fletcher, Cyc. of Corporations, Sec. 309; 13 Am. Jur., Corporations, Sec.

318), but there is no mutual power to act in the matter. The preferred stockholders had no right to compel redemption. Smith v. Southern Foundry Company, supra. It was made entirely optional with the common stockholders to do so at certain definite times for specified sums, the later period being at $5 less per share. It is a rule of general acceptation that where one party is given the right of election he is bound to exercise it promptly and may not delay in order to speculate on future contingencies and developments. The provision was a condition or stipulation of a right of election given the common stockholders to do something, namely, to terminate the relationship by causing the corporation to retire the stock at certain times. 12 Am. Jur., Contracts, Sec. 434. The preferred stockholders had nothing whatever to say or do about the matter. The correlative obligations and rights of an option contract with respect to the duration continue only until terminated by acceptance or rejection by the party whose duty or obligation it is to act. As stated in 12 Am. Jur., Contracts, Sec. 56: "An offer which specifies a time for its duration terminates by the lapse of the time specified therein; the acceptance must take place within that time." A provision fixing the time for acceptance is of the essence of such contracts. 12 Am. Jur., Contracts, Secs. 56, 312, 322. This is especially true where the property is of a speculative or fluctuating value. Restatement of the Law of Contracts, Sec. 276(e), Comment 2; Williston on Contracts, Secs. 853, 854; Rounds v. Owensboro Ferry Company, 253 Ky. 301, 69 S. W. 2d 350; Baker v. Wides' Ex'r 299 Ky. 414, 185 S. W. 2d 699.

Since time was a material matter in this right of election to terminate the relationship, or to exercise the option to redeem the stock, the sharp question is what was the intention expressed by the phrase "at the end of five years from this date." Wherever the question as to similar terms has arisen, the controversy between the parties seems to have been only whether the right must have been exercised before the expiration or a reasonable time thereafter.

In M. Fine Realty Co. v. City of New York, 53 Misc. 246, 103 N. Y. S. 115, in construing a contract which provided that it could be terminated "at the expiration of one year on sixty (60) days' notice in writing," the

court held the provision defined a limit of time. It wrote: "This clause undoubtedly means at the expiration of one year from the commencement of the term provided by the lease; that is to say, one year from October 1, 1902. It is contended by the appellant that the 60 days' notice could be given at the expiration of the year or at any time thereafter and that the only restriction on the privilege reserved to the landlord to give the notice at any time was that it should not be given during the first year of the term. The phrase 'at the expiration of one year' defines the limit of time. It marks the close of a period, not its beginning, as said in Ferree v. Moquin-Offerman-Hessenbuttel Coal Co., 29 Misc. 624, 61 N. Y. S. 120."

We find no case holding that such provisions give the optionee unlimited time after the definite period had expired. In Central Guarantee Company v. National Bank of Tacoma, 137 Wash. 24, 241 P. 285, 45 A. L. R. 721, a bank had signed a subscription for five years from January 1, 1921, for a directory published annually. However, the agent of the publisher had endorsed upon the subscription form, "Privilege to cancel at the end of 1st year by this bank." On January 11, 1922, the bank notified the publisher that it elected to cancel the contract. It refused to recognize the cancellation, contending that the privilege granted the bank to terminate the contract at the end of the year must have been exercised prior to the last day of the period fixed and not thereafter. Drawing a distinction which the court thought would be drawn by the ordinary person or one not versed in the technical lore of the law between contract provisions for action "within" and "at the end of" a definite period, the court held that the end of the year marked the beginning of the right to cancel the subscription rather than the termination of it. It held that the bank had acted within a reasonable time, namely, ten days afterward, and sustained its position. This is in accord with the rulings in other cases that the word "at" is used in the sense of "after" but "near to" the date, and that action within a reasonable time after the expiration of the period satisfies the contractual provision. Annan v. Baker, 49 N. H. 161; Rogers v. Burr, 97 Ga. 10, 25 S. E. 339; LaDow v. E. Bement & Sons, 119 Mich. 685, 79 N. W. 1048, 45 L. R. A. 479; Tacoma National Bank v. Sprague, 33 Wash. 285, 74 P. 393; I. X. L. Furni-

ture & Carpet Installment House v. Berets, 32 Utah 454, 91 P. 279. The Georgia case involved a contract stipulating the right of a subscriber of stock to elect whether to keep the stock or not at the expiration of three years from the time stated. The Michigan case involved an obligation of the seller of corporate stock to re-purchase it at the end of a stated period, and the court held that three years afterward was not a reasonable time in which to give notice of a desire to have the seller re-purchase the stock.

We have a converse case in Smith v. Southern Foundry Company, 166 Ky. 208, 179 S. W. 205. The charter provided that: "At the end of the third fiscal year 10 per cent. of said preferred stock shall be redeemed and retired, and at the end of each fiscal year thereafter 10 per cent. of said preferred stock shall be redeemed and retired until the entire amount shall have been redeemed and retired. However, it is provided that at the end of the second fiscal year the board of directors of said corporation shall have the option of redeeming and retiring all or any part of said preferred stock, provided that said part shall be equal to 10 per cent. of said stock."

There were several other unusual provisions which tended strongly to make the preferred stockholders creditors of the corporation. One of them brought suit several years after the end of the third fiscal year to collect the amount due him under those provisions, his action being in effect to compel redemption of the stock. We held the action could not be maintained.

In Magoffin v. Holt, 62 Ky. 95, I Duv. 95, a contract for the sale of an interest in land provided that if "at the expiration of three years" the purchaser, Holt, so requested, the vendor Magoffin would buy it back. Such a request was made by Holt almost a month after the expiration of three years. This was held to have been too late, the provision being construed as requiring notice on the day on which the period expired, the word "at" being used to denote a fixed and definite time and not in the sense of "after." The court said: "From the very nature of the agreement, then, and of the acts to be performed by the parties respectively, the natural inference would be that they intended to fix, certainly and definitely, the time of performance. This, we think, was done by the employment of terms as appropriate,

and as expressive of such intention, as any that could have been selected. 'At the expiration of three years' means, and was intended to mean, the day on which the period of three years expired. The meaning is as clear, we think, as it would be in the case of an ordinary promissory note for the payment of a sum of money at the expiration of three years from date.''

The court recognized the general doctrine that equity will not ordinarily regard time as of the essence of an executory contract for the sale of land, and will enforce specific performance even though the plaintiff may have failed to pay the money or convey the title on the stipulated day, but because of the absence of mutuality of rights and obligations—the vendor, Magoffin, having no right that he could legally enforce but only the obligation to re-purchase the land upon a contingency or the will of Holt—we held that the delay was fatal to Holt's right to compel performance by Magoffin. The same principle—that where the rights and obligations of the parties are not mutual, the party having the right of election must act promptly—was applied in Montgomery v. Phoenix Mutual Life Ins. Co., 77 Ky. 51, 64, 14 Bush, 51, 64; Smith v. Cansler, 83 Ky. 367; Asher v. Roberts, 206 Ky. 186, 266 S. W. 1089. As already suggested, the preferred stockholders had nothing whatever to say or do about the matter. They were subject entirely to the will of the other parties.

Recently, in Good v. Evans, 296 Ky. 756, 178 S. W. 2d 600, where an option to purchase property was given the lessee ''at the end of five years from this date,'' we held it was too late for him to take action under the option some months after the expiration of that time. Cf. Monroe v. Bailey, 145 Ky. 794, 141 S. W. 412, holding that one day after a date specified in a contract for the sale of land was in time to bind the vendor.

In this case the common stockholders had gone along for twelve years without attempting to exercise the option or make the election of calling the preferred stock for retirement. And in 1937, seven years after the expiration of the second period for calling it, they had amended the charter and increased the capital stock through the means of distributing a large surplus instead of using it to retire the preferred stock. The amendment carefully described and provided for the

continuance of the preferred stock. The Board of Directors at that time was constituted of holders of both classes of stock. Here, it may be said, was a contemporaneous construction and tacit recognition by the common stockholders that they had no right at that time to retire the stock. There is an old saying of an English judge: "Show me what the parties did under the contract and I will show you what the contract means." So it is, where the terms of a contract are unclear, the practical interpretation of the parties as manifested by their action under it is accepted as of considerable influence by the courts in construing those terms. Martin v. Board of Education of Bath County, 284 Ky. 818, 146 S. W. 2d 12.

The Court construes the provision in the charter of the corporation giving it the right to retire the preferred stock "at the end of five years" the same as the circuit court construed it, namely, within a reasonable time thereafter, and that more than twelve years was not a reasonable time.

The cross-appeal relates to a claim to equalization of dividends contingent upon a decision that the preferred stock could be retired, hence now presents no question.

The judgment is affirmed.

Whole Court sitting except Judge Sims.

Chief Justice Tilford and Judge Thomas dissenting.