**Jim GREENE and W. Ray Anderson, Appellants,**

v.

**J.D. COFFEY and Lois Coffey; Samuel Rice, Pat Rice, Joe David Brown, and Linda M. Brown, Individually, and d/b/a Poor House Farm, a Kentucky General Partnership, Appellees.**

Court of Appeals of Kentucky.

Feb. 15, 1985.

Rehearing Denied April 5, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court June 4, 1985.

William Colvin, Greensburg, Patricia Ann Thomas, Burkesville, for appellants.

John S. Cary, R. Fred Capps, Law Offices of John Sam Cary, Burkesville, for appellees.

Before CLAYTON, COOPER and HOWERTON, JJ.

CLAYTON, Judge.

This is an appeal from a summary judgment of the Cumberland Circuit Court by Jim Greene and W. Ray Anderson as lessees under an oil and gas lease determined by the trial court to have expired of its own terms as of midnight, October 23, 1982. Greene and Anderson argue that the trial court erred in entering such judgment as genuine issues of material fact existed. The record is uncontroverted as to the material facts. As a matter of law, however, we conclude that the lessor-property owners, the Coffeys, Rices, and Browns, were not entitled to summary judgment. Given the definition of "production" found in *Hutchinson v. Schneeberger*, Ky., 374 S.W.2d 483 (1964), Greene and Anderson's well hole number one was under production on the final day of the primary term of the lease so as to prevent its expiration. Accordingly, the judgment of the Cumberland Circuit Court is reversed with instructions

that summary judgment be entered in the appellants' behalf as to the question of the expiration of the lease with further proceedings to be had on the appellants' counterclaim.

The material facts are neither complex nor controverted. Greene acquired his interest in the lease in August of 1982 from the original lessee, a Texas corporation. Anderson subsequently purchased a working interest from Greene in the early months of 1983. The proper drilling permits were acquired and a first well hole was sunk in mid-August of 1982. On August 31, 1982, some 40 barrels of oil were then removed from the hole and sold to Oil Purchasing, Inc. of Albany, Kentucky. Due to mechanical and financial difficulties, no further oil was pumped from the well hole until March of 1983, approximately five months after the October 23, 1982, expiration date found in the parties' lease. The appellants continued to remove oil from the well until November 19, 1983, removing in total some $8,220 worth of oil.

The lease upon which this controversy centers is a standard form oil and gas lease. Contained in the body of the lease is a printed habendum clause providing for a one-year primary term of duration from October 23, 1981, "and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee." At the bottom of the lease, the following typewritten language has been inserted,

In the event the lessee does not have production at the expiration of the primary term, the lease may be extended for an additional year upon payment of $15,000 rental.

The appellees maintain that this language expresses the intent of the lessors that the lessees actually be pumping oil from the well on October 23, 1982, in order to continue the term of the lease absent a $15,000 payment. To interpret the inserted language otherwise would supposedly do nothing more than erroneously equate it with the printed language of the standard habendum clause mentioned above. In the appellees' view, the critical language is the

phrase "at the expiration of the primary term," which under *Thompson v. Fairleigh*, 300 Ky. 144, 187 S.W.2d 812 (1945), they interpret as requiring production on the final day of the primary term of the lease, October 23, 1982.

We have no misgivings about the appellees' argument as to the critical date for production; it is persuasive and well written. However, an unstated, but important question is left unanswered. Specifically, "what acts, operations or conditions constituted 'production' on October 23, 1982?" On this question, the lease is silent. The deposition of the original lessor, J.D. Coffey, gives no indication of what he intended to constitute production on October 23. Although he apparently intended that there be production on that date, he gives no clear indication of what he or the original parties exactly intended that term to signify. The appellees' brief apparently defines the term to mean the pumping of oil from the well hole into a storage tank. *Hutchinson*, however, indicates to us that this definition of production is far too narrow, absent some contrary expression of intention by the parties as found in the body of the lease. Under *Hutchinson*, "production" is broadly defined to include not only its obvious denotation, the pumping of oil, but also the discovery of oil during the initial term of the lease coupled with the exploitation and removal of the discovered oil within a reasonable time thereafter. *Id.* at 486–87.

The facts in *Hutchinson* are strikingly similar to those of the present appeal. In *Hutchinson*, the lessee held a leasehold interest for oil and gas exploration, under a lease providing for a fixed term of duration for two years, expiring on December 9, 1957, unless, in the language of the standard habendum clause, "and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee." In November of 1957, the lessee discovered oil at the 150 foot level in "Maxam Sand," but instead of removing the oil, he elected to

drill deeper into "Weir Sand." With the onset of winter, the lessee shut down operations until June of 1958 at which time he began pumping oil from the "Maxam Sand" at a rate of three barrels a day.

Kentucky's highest court was then faced with, in its own words, the question of "whether there was production within the intent of the lease on December 9, 1957, the date on which the term expired unless there was production." *Id.* at 486. After discussing the above facts, the Court determined:

> ... that as a matter of public policy which looks to the facilitation of development work in oil, gas, and other minerals, a lessee who in good faith is prosecuting work for development [of the discovered oil] with reasonable diligence will be protected against cancellation of his lease. We therefore hold that there was production under the provisions of the lease and within the intention of the parties and the lessee in good faith was prosecuting work for development with reasonable diligence. (citations omitted). *Id.* at 487.

Appellees contend that *Hutchinson, supra*, is inapplicable since it deals only with the language of the printed habendum clause and does not address the situation of a specially inserted clause such as the one presently involved. However, we note that both the standard habendum clause and the parties' inserted typewritten clause use the term "production" when discussing the expiration of the lease. It is also argued that applying *Hutchinson* to the present appeal does nothing more than equate the language of the parties' inserted clause with that of the printed habendum clause. We disagree. The typewritten clause affords the lessors the benefit of receiving $15,000 for a single term, one-year extension of the oil and gas lease in the event that the lessees had failed to discover and exploit *any* oil. Absent this inserted language, the lease would have automatically expired on October 23, 1982, had there been no oil

discovered and exploited. Thus, the type-written clause is not rendered mere surplusage by our application of *Hutchinson, supra.* Indeed, to have adopted the appellees' view would have meant that even had Greene and Anderson been pumping 100 barrels of oil a day from the well during the entire duration of the lease, they still would have lost their leasehold interest, absent a $15,000 payment, had oil not been flowing on October 23, 1982. Under the appellees' interpretation, a single mechanical failure could have stripped the appellants of their interest had it happened to have fallen on the wrong day.

We do not believe such an unusual and harsh construction of the inserted language is warranted either by the language of the lease or by the parties' expression of intention. Moreover, such an interpretation "flies directly in the face" of *Hutchinson* and the public policy as expressed by it. Absent a clear expression of intent by the parties to adopt such a restrictive construction, we are bound by *Hutchinson, supra,* to conclude that production as expressed under the language of the lease was in effect on October 23, 1982.

Accordingly, we reverse the judgment of the Cumberland Circuit Court with instructions that a summary judgment be entered in the appellants' behalf as to the issue of the expiration of the lease with further proceedings to be had on the issues raised by the appellants' counterclaim.

All concur.