Roger D. LEASOR, Sr., Angela L. Leasor, and Richard H. Shuster, Appellants,

v.

Edward F. REDMON, Appellee.

Supreme Court of Kentucky.

July 2, 1987.

Rehearing Denied Sept. 3, 1987.

Frank E. Haddad, Jr., Richard H. Shuster, Gary R. Hillerich, Louisville, for appellants.

William Katzinski, Louisville, for appellee.

## OPINION OF THE COURT

The Court of Appeals entered an order awarding damages to Edward F. Redmon against Roger D. Leasor, Sr., Angela L. Leasor, and their attorney, Richard H. Shuster. The damages were awarded pursuant to CR 73.02(4). We affirm.

The facts, according to the Court of Appeals opinion, *Leasor v. Bailey*, Ky.App., 714 S.W.2d 156 (1986), are as follows:

"Angela Leasor is the adopted daughter of Roy and Juanita Bailey. Because the Leasors had limited financial resources, the Baileys offered to give them $15,000 to be used as a down payment on a house. The Baileys intended to make the gift in order to provide Angela, her husband, and her three children with a stable and secure environment.

"Edward Redmon, a licensed real estate agent, located an appropriate home on behalf of the Baileys. However, the Leasors could not afford financing at the then-current market rates. For that reason, Roy and Juanita Bailey purchased the home in their own names with a $15,000 cash down payment, financing the balance. The Leasors moved into the home shortly after the purchase.

"Several months later, Cumberland Federal Savings and Loan Association acquired some low-interest mortgage money. After learning of the money, the Baileys initiated loan negotiations with Cumberland Federal. Cumberland Federal needed a real estate purchasing agreement and a gift letter to complete its file on the loan application. As an accommodation to the Baileys, Redmon filled out a standard real estate purchasing agreement showing the Baileys as sellers and the Leasors as buyers. The Baileys also executed a gift letter which provided that the Baileys 'have given/will give a gift of $15,000.00 equity in home to [Angela Leasor].' The Leasors gave up nothing of value in exchange for the contract and the gift letter. In fact, the contract provided that the Baileys would pay all processing fees, points and closing costs.

"While the loan was being processed, the Leasors informed the Baileys that they would prefer to receive a $15,000 cash gift instead of the equity in the home. The Leasors told the Baileys that they could not afford to buy the home, and that they would rather use the cash to pay off some old debts and purchase a mobile home. The Leasors convinced the Baileys that they would sell the home after the gift and financing were completed, take whatever cash they could net, and do with it as they pleased.

"As a result, the Baileys decided not to make the gift and called Redmon for assistance in cancelling the loan application. After breaking off negotiations with the bank, the Baileys brought this action against the Leasors seeking back rent,

eviction and a declaration that they are the sole owners of the subject property. The Leasors counterclaimed against the Baileys for the value of the gift and for tortious interference with the loan application. The Leasors also filed a third-party complaint against Redmon and his employer, alleging tortious interference with contractual relations. The lower court granted the Baileys summary judgment on their claims against the Leasors, dismissed the Leasors' counterclaim, and dismissed the Leasors' third-party complaint against Redmon."

After the decision by the Court of Appeals affirming, Redmon and the Baileys filed CR 73.02(4) motions seeking damages and attorney fees against the Leasors and their attorney. After considering the response to the motion, the Court of Appeals denied the motion filed by the Baileys, but granted the motion filed by Redmon and assessed damages and attorney fees against the Leasors and their attorney, jointly and severally.

The Leasors and Shuster, their attorney, appeal the order to this court. We affirm the order of the Court of Appeals.

CR 73.02(4) provides:

If an appellate court shall determine that an appeal or motion for discretionary review is frivolous, it may award just damages and single or double costs to the appellee or respondent. An appeal or motion for discretionary review is frivolous if the court finds that the appeal or motion is so totally lacking in merit that it appears to have been taken in bad faith.

The ABA Code of Conduct, Canon 7, adopted by this court in 1971, provides as follows:

The duty of a lawyer, both to his client and to the legal system, is to represent his client zealously within the bounds of the law, which includes Disciplinary Rules and enforceable professional regulations....

. . . . .

The advocate may urge any permissible construction of the law favorable to his client, without regard to his professional opinion as to the likelihood that the construction will ultimately prevail. His conduct is within the bounds of the law, and therefore permissible, if the position taken is supported by the law or is supportable by a good faith argument for an extension, modification, or reversal of the law. However, a lawyer is not justified in asserting a position in litigation that is frivolous.

Against this background, we consider the factors in reviewing the imposition of sanctions for a frivolous appeal.

The Leasors and Shuster assert that sanctions are not warranted where counsel, in good faith, believes in the position he advocates and presents a rational argument to the appellate court.

A secondary assertion is that sanctions are not warranted when a court of the Commonwealth has found merit in its position.

 We are of the opinion that the belief of counsel, which is subjective, cannot enter into the determination of whether the appeal is frivolous. The factors to be considered must necessarily be in the record which can be reviewed objectively. Thus, in accordance with CR 73.02(4), if the court finds that the appeal is totally lacking in merit in that no reasonable attorney could assert such an argument, bad faith may be inferred, and the appeal is frivolous.

 In reliance on the assertion by the Leasors and Shuster that they made a rational argument, we are cited to *Hardy v. St. Matthews' Community Center*, Ky., 267 S.W.2d 725 (1954), and *Cox v. Jennings*, 309 Ky. 238, 217 S.W.2d 305 (1949). *Hardy* involved an inter vivos gift of personalty. Just how this is authority for a constructive delivery of the "gift" here is not explained to us, nor do we believe it can be explained. *Cox*, in rejecting a claim of parol gift of land, stated there must be strong and convincing evidence, which is not present in the case. Mercifully, *Cox* has never been cited by this court for this proposition. All of this argument ignores KRS 382.010, and we are not favored with

any explanation of how this court can overrule the statute. The letter under the law could not be construed as a gift of an equity in land.

The position of the Leasors and Shuster on this argument is not supported by law, nor is there any argument for an extension, modification, or reversal of the law. We are of the opinion no such argument can be made in good faith. Thus, it is clear the assertion that a rational argument was or is made is totally without merit and as frivolous as the argument made before the Court of Appeals.

The argument that the district court found the Leasors had an equity in the property, if it did so, entitling them to appeal the proposition to the Court of Appeals is not supported by any authority, and we cannot think of any that would support this curious argument.

The matters discussed thus far apply to the appeal to the Court of Appeals against the Baileys. Just how this is relevant to the real issue in this appeal has not been revealed to us. The Court of Appeals denied the Baileys' motion for sanctions.

We understand from the record that the Court of Appeals order assessed damages and attorney fees in favor of Redmon. The Leasors' claim against Redmon was for tortious interference with a contract. The only comment by the Leasors and Shuster on this claim is that such a cause of action has been recognized in *Henkin, Inc. v. Berea Bank & Trust Company*, Ky.App., 566 S.W.2d 420 (1978).

*Henkin* held:

> We conclude that tort liability exists in Kentucky for the malicious interference with known contractual rights of another when special damage results therefrom, at least when accomplished by some unlawful means such as fraud, deceit or coercion.

We would expect that the Leasors' and Shuster's brief would tell us why the Court of Appeals was in error in finding the Redmon claim frivolous. This brief contains nothing to enlighten us. At oral argument, counsel quoted at length from portions of the record in *Leasor v. Bailey* in the Court of Appeals. This record was not made a part of the instant case on appeal. Ordinarily, we would not consider this record, but out of an abundance of caution, we have requested and received this record.

We find from the complaint against Redmon that the Leasors alleged that he prevailed upon the loan officer of the savings and loan to stop the processing of the Leasors' loan aplication and that this action of willfully and wrongfully interfering with the processing of the Leasors' loan was in breach of his fiduciary duties to the Leasors.

It is further alleged that as a result of the tortious conduct the savings and loan stopped the processing of the Leasors' loan application, and the Leasors were unable to purchase the real property.

Somewhere in between the complaint and brief, this allegation was converted into tortious interference with a contract. We have been spared the explanation of how this happened. An application for a loan at a bank or savings and loan association is by its very terms not a contract; further, Roger Leasor testified in his deposition that he did not hire Redmon. Angela Leasor also testified that she did not hire Redmon. Redmon was employed by the Baileys, which negates completely the allegation in the complaint that Redmon breached his fiduciary duties to the Leasors.

We cannot fathom how this allegation was converted into an argument of a cause of action for tortious interference with a contract.

The only contract we find in the Court of Appeals record in the Bailey case is a standard real estate contract in which the Baileys agreed to sell and the Leasors agreed to purchase the house, with a balance of $26,000 to be financed by a mortgage. The contract, if it can be called that, provided that the Baileys would pay all the closing costs and points and where, as evidence of good faith binding this contract a deposit of _____ is recited, the blank space is filled in with "None."

There is filed with this paper a "To Whom it May Concern" paper certifying that the Baileys have given/will give a gift of $15,000 equity in the house.

The clincher on the frivolity of this proceeding was the testimony of Roger Leasor that he and his wife wanted to sell the house and receive the equity. He testified that this change in plans was for the reason: "There was no way we could afford this house. I had taken a three dollar wage cut on the hour. There was no way. I lost over eighty dollars per week." He again testified he had told the Baileys that there was no way "we could afford the house."

From the testimony of Roger Leasor and Angela Leasor, they clearly understood the purpose of the Baileys' proposed gift of equity, and sale of the house to the Leasors was to provide a place to live for the Leasors and their three children.

The Baileys were the prime movers in the loan application. After the controversy about the sale of the house arose and the Baileys signified their intention to withdraw the offer of a gift of equity, there was nothing to process in the loan application. Further, as *Henkin, Inc.* requires special damages be proved, we do not understand how the Leasors could be damaged when we have the testimony that there was no way they could afford the house.

There was no tortious interference with a contract here; there was no fiduciary relationship between Redmon and the Leasors; and the Leasors could not show any damage in any event. There is absolutely no showing or argument as to how Redmon, in this case, interfered with known contractual rights of the Leasors by fraud, deceit, or coercion. According to the facts in this record, there could not be such a showing.

We are of the opinion there is a total lack of merit in the appeal to the Court of Appeals. The Code of Conduct applicable to members of the bar recognizes that a client is entitled to zealous representation by a lawyer. The Code also demands that the argument by counsel have support in the law or be an argument for extension, modification, or reversal of existing law. None of the assertions in the Court of Appeals or here meets the obligations of the Code of Conduct.

The Court of Appeals characterized the appeal as a complete and utter waste of time for the court and counsel. We agree with this observation and cannot improve on it as comment on this appeal.

The order of the Court of Appeals is affirmed.

GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LAMBERT, J., dissents and files a separate dissenting opinion in which STEPHENS, C.J., and LEIBSON, J., join.

LAMBERT, Justice, dissenting.

The sole issue in this case is whether Leasors' appeal to the Court of Appeals from the trial court's summary judgment in favor of Redmon is so totally lacking in merit that it appears to have been taken in bad faith. CR 73.02(4).

After considerable intra-family discord, Mrs. Bailey instructed Redmon, the real estate agent, to cancel the loan application made by Leasors to Cumberland Federal Savings and Loan. Without obtaining Leasors' approval or even notifying them, Redmon proceeded to contact the lender and cancel the loan application. In their civil action against Redmon, Leasors alleged that he willfully and wrongfully interfered with their loan application and that as a result of his tortious conduct, their loan was denied.

The majority takes the position that Redmon could not have been guilty of tortious interference with a contract because "[a]n application for a loan ... is by its very terms not a contract." Unfortunately, this view ignores a significant body of law which proscribes the intentional interference with the prospective contractual relations of another. The *Restatement (Second) of Torts*, § 766B, "Intentional Interference with Prospective Contractual Relation" (1979) is as follows:

One who intentionally and improperly interferes with another's *prospective* contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation. (Emphasis added.)

Under this section, there is no requirement that an enforceable contract exist. Only the prospective existence of a contract is required. See *Cullen v. South East Coal Company,* Ky.App., 685 S.W.2d 187 (1983) for recognition of actions in Kentucky for violation of § 766B of the *Restatement (Second) of Torts.* Regrettably, the majority opinion leads one to conclude that a person may intentionally and improperly interfere with the contract negotiations of others with impunity.

It is significant that the District Court denied Baileys' forcible detainer claim. In addition, Baileys had executed an instrument in which they acknowledged their intention to give $15,000 equity in the home to Leasors. While these facts do not establish that Leasors should have prevailed in their action against Redmon, they do show that Leasors were not strangers to the transaction and that they were not without a right to pursue their loan application. As Redmon was without authorization from Leasors, reasonable minds could have concluded that his contact with the lender was an intentional interference with their prospective contractual relations. Thus, I do not believe an appeal from the summary judgment in favor of Redmon was inconsistent with sound professional judgment. Certainly, I do not believe it was frivolous.

As the majority opinion correctly notes, a lawyer has a duty "... to represent his client zealously within the bounds of the law, ..." and a lawyer may freely urge a position "supportable by a good faith argument for an extension, modification, or reversal of the law." ABA Code of Conduct, Canon 7, adopted by this Court in 1971. I am concerned, however, that the opinion of the Court will have a chilling effect upon the practice of law and provoke timidity and excessive caution, contrary to the best interest of the public and the development of the law.

STEPHENS, C.J., and LEIBSON, J., join in this dissent.