**KENTON COUNTY FISCAL COURT; and Office of The Kenton County Attorney, Appellants,**

v.

**John R. ELFERS, Appellee.**

**No. 1997–CA–001971–MR.**

Court of Appeals of Kentucky.

Oct. 30, 1998.

Garry L. Edmondson, Covington, for Appellants.

Philip Taliaferro, Alice G. Keys, Robert W. Carran, Covington, for Appellee.

Before JOHNSON, KNOPF and SCHRODER, JJ.

## OPINION

JOHNSON, Judge.

The Kenton County Fiscal Court and the Kenton County Attorney have appealed from the judgment of the Kenton Circuit Court entered on July 28, 1997, which determined the entitlement to funds that had accumulated in the Kenton County Attorney's Domestic Relations checking account during the tenure of the appellee, John R. Elfers (Elfers), as Kenton County Attorney. We affirm.

The facts in this case are somewhat complex though not in dispute. In 1975, in an effort to address the significant problem of nonsupport of children, the United States Congress passed legislation creating the Child Support Enforcement Program. The program is generally referred to as Title IV–D of the Social Security Act (the IV–D program). 42 U.S.C. 651 *et seq.* The IV–D program provides federal matching funds to states to assist in locating absent parents, in establishing paternity, obtaining child support and enforcing child support orders for families who receive Aid to Families with Dependent Children (AFDC) and for those who do not qualify for such benefits. States are required to have a IV–D program in order to remain eligible for AFDC funding. Since its inception, the program has been administered in Kentucky by the Cabinet for Human Resources (the Cabinet) and more specifically, the Cabinet's Department for Social Insurance, Division of Child Support Enforcement. *See* Kentucky Revised Statutes (KRS) 205.710 *et seq.*

In the beginning of the IV–D program, the Cabinet looked to the fiscal courts of our counties to supply IV–D services. Prior to 1976, when Kentucky's Judicial Amendments

became effective, the collection of child support had traditionally been a function of the county fiscal courts. In 1978, the Kenton County Fiscal Court transferred all child support collection efforts to Elfers who already had a contract with the Cabinet to perform IV–D services. Elfers absorbed into his office those persons employed by the fiscal court in child support activities. Elfers became solely responsible for all the costs incurred with the collection of child support in Kenton County. It is undisputed that, beginning in 1978, the Kenton County Fiscal Court did not provide any funds for the child support program. No reports were requested or required from Elfers by the Kenton County Fiscal Court, and he did not report his child support activities to the fiscal court.

When Elfers took over the responsibility for child support collection, he also began receiving the "poundage" assessed in Kenton County on all child support collected. This fee was 2% of the support paid in 1978, but was increased to 3% in 1986. During the years 1976 through 1993, Elfers performed IV–D services under contracts with the Cabinet. In exchange for providing IV–D services, these contracts entitled Elfers to be reimbursed a portion of his office expenses, including an hourly rate for his own services. The rate of reimbursement changed [1] over the years but was never 100% of the cost of the program.

In order to entice county attorneys to enroll in the program,[2] and to assume liability for the "local match" (the unreimbursed costs of the program), the Cabinet encouraged and assisted county attorneys in getting their local fiscal courts to pass resolutions allowing the incentive payments received from the federal government to be paid directly to the county attorneys. The Kenton County Fiscal Court passed such a resolution in 1983. From 1978 until the early 1980's, the incentive paid to the Kenton County Attorney was equal to 15% of the amount collected. It was reduced to 12% briefly and then changed to a formula based upon the effectiveness of the

program, equivalent to 6 to 10% of the amount collected.

There is no question that when a fiscal court resolution was in place, the Cabinet treated the incentive payments as belonging to the individuals with whom it had contracted. Beginning in 1990, the contracts, including Elfers', specifically provided as follows:

4. The IV–D Agency agrees to forward Federal reimbursement received from DHHS for the expenditures of the Second Party to the fiscal court, (political subdivision), assignee, or person that has fiscal responsibility and authority for the Second Party.

In the event a contracting official leaves office, he shall be entitled to receive reimbursement and incentives for the time period he was the contracting official of record, if a Fiscal Court Resolution exists.

All Resolutions stating "The Office of etc." shall be interpreted to mean the contracting official of record.

From 1978 until 1993, Elfers put all the funds he received from poundage, reimbursements and incentive payments into one account, the "Kenton County Attorney General Domestic Relations" checking account. He paid all the expenses of the child support program from this account except he allowed the reimbursement for his own salary to accumulate in the account. The sum that had been allowed to accumulate had grown to nearly $1,000,000 by the end of 1993. Elfers withdrew $964,269.95 from the account on December 7, 1993. In January 1994, he deposited that sum and the interest it had earned while in his possession with the Kenton Circuit Court Clerk, and filed a petition seeking a judgment declaring his entitlement to the funds. In addition to these amounts, Elfers also sought a judgment entitling him to $95,273.82 in incentives and $89,684.17 in reimbursements forwarded to the new Kenton County Attorney, Garry Edmondson, for

---

1. The rate was 75% in 1978. It was 66% in 1993.

2. While the county attorney was usually the official with whom the Cabinet contracted, the county attorney was not required to assume this responsibility. *See* Kentucky Revised Statutes (KRS) 205.712(4).

services rendered during Elfers' 1993 contract period.[3]

On October 4, 1996, Elfers filed a motion for summary judgment. The motion was accompanied by a 64–page memorandum and numerous exhibits in which Elfers outlined the historical background of the IV–D program, the contracts under which he provided services for the Cabinet and other pertinent affidavits. The appellants filed a response to the motion in which they failed to point to any factual discrepancies or inaccuracies in Elfers' motion. They merely noted their disagreement with Elfers' "slant" on the facts. They argued that the "determinative historical fact regarding the issue [of entitlement to the checking account] is the 1983 Resolution" enacted by the Kenton County Fiscal Court. The appellants insisted below, as they do in this appeal, that there is a material issue of fact as to the meaning of the phrase "discretionary office expense fund" which was a part of the 1983 Resolution.

In its final judgment, the circuit court described the federal codes, regulations, state statutes and state regulations and the Kenton County Fiscal Court resolution which impact the issue in controversy. The circuit court thoroughly analyzed the legal arguments of the parties and adopted Elfers' analysis of the issue and determined he was entitled to the funds in the checking account as a matter of law. It concluded: "[Elfers] earned the money in good faith and should be entitled to keep it."

In this appeal, the appellants make the following arguments: (1) the trial court erred in determining there to be no genuine issue of material fact; (2) the trial court erred in construing the term "office expense" contained in the 1983 fiscal court resolution; and (3) the trial court erred in its application of the doctrine of equitable estoppel to the facts of this case.

First, it is apparent that the issue of entitlement to the funds is a question of law and not one of fact. We are well aware of the standards articulated in *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807

S.W.2d 476 (1991), that must be met in order to entitle one to a summary judgment. If the appellants had alleged the existence of a genuine issue of material fact bearing on this dispute, we would not hesitate, given the *Steelvest* mandate, to remand this matter to the trial court for fact-finding. However, the appellants have not persuaded this Court that there are any disputed facts bearing on the issue raised in the petition for declaratory judgment.

In their brief, the appellants argue that the "one (1), over riding, issue of material fact" which was not addressed by the trial court is the meaning of the phrase "discretionary office expense fund." As Elfers points out however, the issue of the correct interpretation of a statute, or as in this case a resolution, is decidedly a question of law and is not one appropriate for a jury's determination. *See O'Connor & Raque Company v. Bill,* Ky., 474 S.W.2d 344, 346 (1971), and *Masonic Widows and Orphans Home and Infirmary v. City of Louisville,* 309 Ky. 532, 543–544, 217 S.W.2d 815, 822 (1948).

Next, the appellants argue that the resolutions that had been adopted by the fourteen counties and placed in the record in support of Elfers' motion for summary judgment are somewhat different than the Kenton County resolution. Several of these resolutions use the phrase "discretionary expense fund" instead of "discretionary office expense fund" as in Kenton County. The appellants argue that these "discrepancies, standing alone, create genuine issues of material fact which have yet to be resolved." Again, we believe it axiomatic that the interpretation of the particular Kenton County resolution is a legal question for the courts. The fact that the Kenton County resolution is, or is not, similar to resolutions in other counties is not a "material fact" germane to the resolution's proper interpretation.

The appellants criticize the circuit court for relying on an accounting prepared by an expert hired by Elfers and for having "failed to recognize the audit" prepared by the Audi-

---

**3.** While Elfers named the Cabinet as a party to the declaratory judgment action, the Cabinet does not claim any interest in the money. The

final judgment of the Kenton Circuit Court dismissed the Cabinet as a party and this ruling has not been challenged in this appeal.

tor of Public Accounts. This so-called "audit" was not an audit, but an examination. It concluded that the term "discretionary office expenses" meant that Elfers could pay himself an hourly wage for his child support collection work, but that it "did not permit the County Attorney to pay himself surplus child support reimbursement and incentive funds as a profit in addition to his hourly wage."

This examination or report was not mentioned in the circuit court's judgment. Elfers argues that the circuit court did not consider the report because it did not come within Kentucky Rules of Civil Procedure (CR) 56.03. The report is not in affidavit form. Nor was it contained in the record in the "pleadings, depositions, answers to interrogatories, stipulations, and admissions...." *Id.* However, even if the report is considered as providing "pertinent material[ ]" in "adjudicating the merits of the motion" for summary judgment, *see Conley v. Hall,* Ky., 395 S.W.2d 575, 583 (1965), the legal opinions of the State Auditor were simply that, legal opinions. By offering an interpretation of the resolution which conflicts with the one Elfers offers, the appellants have not created a material issue of fact.

The appellants argue that the "final and most compelling fact that gives rise to a genuine issue of material fact, [is the] number of personal loans and corresponding deposits" made by Elfers from the checking account to himself. As stated earlier, Elfers allowed his yearly earnings from his contracts with the Cabinet for the performance of IV–D services to accumulate in the account, much like deferred compensation. In answers to interrogatories, Elfers admitted that he advanced sums to himself from the account from funds that he considered to be his accumulated salary. He then repaid those amounts. The appellants assert that this activity somehow creates a fact issue that must be resolved before entitlement to the funds can be determined. Elfers denied that he borrowed money from public funds and submitted proof that he never "borrowed" money from the account for his personal use that exceeded the amount of his accumulated salary. The appellants failed to

provide any evidence that the funds in the account that Elfers used for his personal use exceeded his accumulated salary in the account. In fact, the report of the State Auditor states: "Based on available records, the amounts withdrawn each year were less than Mr. Elfers' total accumulated hourly wages in the child support program account."

The facts in this case are complex. The money in dispute is a large amount, accumulated over many years under several contracts. Units of government at the local, state and federal level were involved in developing an efficient and effective plan for collecting child support. However, complex facts do not create a presumption that there is an issue precluding summary judgment. If the appellants wanted to challenge any of the facts upon which Elfers based his entitlement to the funds, it was incumbent upon them to file appropriate affidavits in response to the motion for summary judgment. Yet, the record reveals that the appellants did not challenge the underlying facts by filing a single affidavit. As a result, the material facts were unrefuted.

At oral argument, the appellants insisted that entitlement to the funds cannot be determined until the source of the funds is determined. It is not timely to raise this argument for the first time on appeal. Rather, it should have been raised in response to the motion for summary judgment. The appellants did not offer any evidence below that the "source" of the funds in the child support account was other than the reimbursements, incentives, poundage and fees associated with the collection of child support obtained pursuant to Elfers' contracts with the Cabinet. Further, the appellants do not allege that they did not have sufficient time to obtain discovery. Although professing to be unhappy with Elfers' answers to interrogatories, they made no motions to compel more complete answers. Simply, the appellants failed to establish the existence of a genuine issue of material fact and the concomitant need for a jury trial.

The only issue to be resolved in this dispute, as we see it, is whether the trial court erred in its interpretation of the resolution as empowering Elfers to expend the incentive

payments in any manner he saw fit, including keeping the profits for himself. The resolution reads in its entirety as follows:

## R E S O L U T I O N

WHEREAS, the County Attorney of Kenton County, Commonwealth of Kentucky, has entered into a cooperative agreement with the Cabinet for Human Resources, Commonwealth of Kentucky, Department for Social Insurance, Division for Child Support Enforcement, to establish and enforce support obligations under Title IV–D of the Social Security Act, and;

WHEREAS, the contract allows seventy percent (70%) reimbursement of expenses relating to specified activities and an incentive payment of fifteen (15%) percent on all appropriate AFDC support collections,

NOW, THEREFORE, BE IT RESOLVED BY THE FISCAL COURT, COUNTY OF KENTON, COMMONWEALTH OF KENTUCKY, that:

The Kenton County Attorney or his nominee or assignee, shall receive any and all payments which are paid pursuant to his Title IV–D contract, restroactive [sic] to signing of said contract, and subsequent related continuing contracts for his use as a discretionary office expense fund.

This the 2nd day of June, 1983.

There is no dispute, as set out earlier herein, that this resolution was passed to facilitate and foster the continued contractual relationship between the Cabinet and Elfers, and to allow the fiscal court to completely detach itself from child support collection efforts.[4] It is significant that the language of the resolution was provided by the Cabinet. John R. Nienaber, Jr., the Fiscal Court Administrator, testified as follows:

I prepared the Resolution exactly as requested by the Cabinet of Human Resources, and the language "for his use as a

discretionary office expense fund" was language specifically stated by the Cabinet as required in a resolution to enable all Title IV–D Program monies to go directly to John R. Elfers for his use in his discretion. Had the Cabinet of Human Resources also suggested adding "and/or compensation," I would have done so, for the intent of the resolution, as passed by the Kenton County Fiscal Court, was to pass through all incentive monies to John R. Elfers. The Fiscal Court did not intend the words "discretionary office expense fund" to be words of limitation. . . . John R. Elfers, to the knowledge of the Fiscal Court, was on his own financially in running the child support program. If there was a loss or a liability incurred, it would be personal to John R. Elfers and the Fiscal Court would have no liability or responsibility therefor.

■ In construing the 1983 resolution, this Court must ascertain the intent and purpose of the Kenton County Fiscal Court. In doing so, it is appropriate to consider the "contemporaneous facts and circumstances which shed intelligible light" on the intention of the legislative body. *See Mitchell v. Kentucky Farm Bureau Mutual Insurance Company,* Ky., 927 S.W.2d 343, 346 (1996). The appellants have not cited one single legal authority in support of their interpretation of the resolution, possibly because they perceive the issue as one of fact and not one of law. Further, the appellants have not offered any possible motive for Elfers to assume responsibility for child support collections if the intent of the fiscal court was to require that he maintain the funds for his successor to use. *See Board of Regents of Kentucky State University v. Gale,* Ky.App., 898 S.W.2d 517 (1995).

■ It is our opinion that the doctrine of contemporaneous construction supports the trial court's determination that the phrase "discretionary office expense fund"

---

4. The affidavit of Robert B. Aldemeyer, a County Commissioner from 1958 to 1986, and Kenton County Judge from 1986 to 1989 states:

At that time [1983], the Kenton County Fiscal Court had no interest whatsoever in the child support collection program in Kenton County, and did not intend the resolution, or the language contained in the resolution regarding

"discretionary office expense fund" to be limiting in any way. John Elfers operated the child support office in Kenton County, paid all expenses, and assumed all liabilities and any funds sent to Kenton County as a result of monies paid for the operation of the Title IV–D Program were intended to be his.

was intended to give Elfers total discretion over the funds. "[W]here the terms of a contract are unclear, the practical interpretation of the parties as manifested by their action under it is accepted as of considerable influence by the courts in construing those terms." *Thompson v. Fairleigh*, 300 Ky. 144, 151–152, 187 S.W.2d 812, 816 (1945), citing *Martin v. Board of Education of Bath County*, 284 Ky. 818, 146 S.W.2d 12 (1940). This same principle applies in the context of statutory construction. "A construction of a law or regulation by officers of an agency continued without interruption for a long period of time is entitled to controlling weight." *Hagan v. Farris*, Ky., 807 S.W.2d 488, 490 (1991). Again, as discussed earlier herein, the appellants do not dispute that the entire time Elfers was under contract with the Cabinet, and even before the resolution was passed, the Kenton County Fiscal Court treated all incentive payments as belonging to Elfers to do with as he pleased. He was never asked to account for the sums or directed in his use of them in any manner.

▆ Next, the appellants make the argument that the incentives were paid to Elfers in his official capacity and that the excess funds should remain with the Office of the Kenton County Attorney and not Elfers individually. This argument, however, overlooks the undisputed fact that the services Elfers performed for the Cabinet in connection with the IV–D Program were services beyond those required of him as the County Attorney. Indeed, a county attorney is specifically empowered to decline to be the contracting official with the Cabinet in operating the program of child support in a county. KRS 205.712(4). Further, Elfers was personally responsible for any liabilities or costs associated with operating the program not covered by the reimbursements and poundage. Having performed those services, and apparently having performed them with considerable success,[5] the current county administration would like to alter its interpretation of the resolution so as to take away all profit Elfers earned over the seventeen years. While there may have been a better way for the

Cabinet and the various fiscal courts to have accomplished the goals of the IV–D Program, it is apparent to this Court that Elfers' contracts with the Cabinet and the 1983 resolution passed by the Kenton County Fiscal Court entitle Elfers to the compensation he has claimed.

Finally, Elfers has raised two issues for our consideration. First, he has moved for the imposition of sanctions for the appellants' pursuit of an allegedly frivolous appeal. Elfers suggests that the appellants' arguments are "so fundamentally flawed that a reasonable attorney would have known of their futility." We disagree.

▆ In order to impose sanctions, it is necessary for this Court to find that the appeal is "so totally lacking in merit that it appears to have been taken in bad faith." CR 73.02(4). *See also Leasor v. Redmon*, Ky., 734 S.W.2d 462, 464 (1987). Sanctions are appropriate only in egregious circumstances that are not apparent in this appeal. While Elfers is correct that a reasonable attorney should recognize that the appropriate construction of terms used in a resolution involves a question of law and not of fact, the appeal nevertheless did raise the issue of the interpretation of the fiscal court resolution. Although we are unpersuaded by the appellants' arguments, we cannot say that the appeal is frivolous.

Next, Elfers argues that he is entitled to post-judgment interest on the sum of $184,-957.99 held by the Office of the Kenton County Attorney during this litigation. This argument is premised on KRS 360.040, a statute which provides for the payment of 12% interest on judgments, and CR 81A. This rule exempts governmental units from giving bond to stay the enforcement of a judgment pending appeal, but provides as follows: "Unless otherwise exempted by law such governmental unit shall be obligated to the same extent as if it had given the bond required."

▆ Regardless of the language in CR 81A obligating governmental unit to the "same extent" as if it had given bond, it is

---

5. The petition alleged that during the seventeen years Elfers served as County Attorney, his office collected over $47,000,000 in child support in Kenton County.

settled that the interest statute, KRS 360.040, has no application to judgments against state government or any of its subdivisions. *See Powell v. Board of Education of Harrodsburg,* Ky.App., 829 S.W.2d 940 (1991), and *Commonwealth, Department of Transportation v. Lamb,* Ky., 549 S.W.2d 504 (1976). This argument, too, is without merit.

Accordingly, the judgment of the Kenton Circuit Court is affirmed.

KNOPF, Judge, concurs.

SCHRODER, Judge, concurs and files separate opinion.

SCHRODER, Judge, concurring.

The Court's opinion sets forth the necessary legal reasoning for affirming the trial court. As an alternative to the legalese, let me say that I agree with Gary Edmondson that collecting child support is part of the county attorney's job. Unfortunately, that wasn't always the case. At one time, child support collection was considered the duty of the fiscal courts, not of the county attorneys. The Kenton County Fiscal Court, like many counties, did run its own inefficient program at a cost to the taxpayers. The Cabinet allowed, and even encouraged, the fiscal courts to farm the collections out and encouraged (through use of federal incentives) the county attorneys to take on this collection work—which is exactly what happened between John Elfers and the Kenton County Fiscal Court. With the incentive payments (federal money), the collection practices for child support took on a higher priority, became more efficient, and in some cases, became very lucrative. The uncontroverted evidence shows that this is what the federal government, the Cabinet, and the fiscal courts wanted, expected, and received. Where most county attorneys took the bonus money yearly, John Elfers allowed the funds to accumulate so that when he left office, there was a considerable sum of money. The new county attorney and a new fiscal court didn't like what they saw and took issue. Legally, the federal government, the Cabinet, the fiscal court, and the county attorney all performed their agreement, paid their bills, and the matter is over. That federal incentive program is no longer in place. The members of the fiscal court that were instrumental in negotiating the contract with the county attorney, and the county attorney collecting the incentive payments are now retired or have been voted out of office. The closing out of the incentive program is no longer a legal issue, but a political issue that will hopefully be finally resolved by this opinion.