**COMMONWEALTH OF KENTUCKY REVENUE CABINET, et al.,**
Movants,

v.

**Herschel ST. LEDGER,**
**et al., Respondents.**

No. 97–CA–1387–I.

Court of Appeals of Kentucky.

June 24, 1997.

Motion for Interlocutory Relief Dismissed Sept. 25, 1997.

Charles S. Cassis, Robert W. Dibert, Jan G. Ahrens, Brown, Todd & Heyburn, PLLC, Louisville, Jennifer S. Smart, Kentucky Revenue Cabinet, Frankfort, for Cabinet.

Thomas J. Luber, Jean W. Bird, Michelle D. Wyrick, Wyatt, Tarrant & Combs, Louisville, Kenneth S. Handmaker, D. Randall Gibson, Augustus S. Herbert, Middleton & Reutlinger, P.S.C., Louisville, for Respondents.

Before ABRAMSON, EMBERTON and KNOPF, JJ.

## OPINION AND ORDER

ABRAMSON, Judge.

The Commonwealth of Kentucky, Revenue Cabinet (the Cabinet) has moved pursuant to CR 65.07 for interlocutory relief from a June 10, 1997 injunction issued by the Jefferson Circuit Court. The injunction prevents the Cabinet from issuing certain intangible property tax refunds "unless it reserves out of each refund check six percent (6%) of the total refund amount (tax and interest) and deposits that six percent (6%) into an interest-bearing escrow account held by a third-party escrow agent." The tax refunds at issue are the result of Respondents' class action lawsuit that successfully challenged on constitutional grounds KRS 132.020 and KRS 136.030(1), the corporate shares tax and an exemption statute, respectively, which were integral parts of Kentucky's intangible property tax scheme. The escrow account mandated by the trial court is intended to preserve a fund from which Respondents' attorneys' fees may be paid once an appropriate fee is determined. The Cabinet claims that the escrow adjustments will prove onerous and costly and that delays in the refund process will expose the Commonwealth to substantial liability for interest payments. Maintaining that our Supreme Court has foreclosed a common fund approach to attorneys' fees in this case, the Cabinet further contends that Respondents' counsel are not entitled to this manner of fee collection and, thus, that the trial court abused its discretion by entering the temporary injunction. Because we believe that Respondents' counsel have certainly raised a substantial question as to their entitlement to the fee collection process provided in KRS 412.070 and that the other factors justifying injunctive relief are clearly present, we deny the Cabinet's motion for interlocutory relief.

## RELEVANT PROCEDURAL BACKGROUND

This dispute over the manner in which attorneys' fees may be collected is the latest episode in a lengthy controversy between the parties. In 1990, the trial court certified two classes of taxpayers, one disputing the validity of KRS 132.030, which imposed a tax on out-of-state bank deposits, and the other (Respondents herein) asserting a similar case against the tax on corporate shares (KRS 132.020) and its companion exemption statute (KRS 136.030(1)). The trial court found the bank deposits tax unconstitutional and the corporate shares tax "unenforceable as written." In its amended judgment of October 21, 1992, the trial court deferred ruling on the proper amount of and manner of collect-

ing attorneys' fees and retained jurisdiction to address those questions after final adjudication of the case.

In 1995, the Kentucky Supreme Court reversed a decision of this Court and affirmed the trial court's holding that the bank deposits tax was unconstitutional. However, the Supreme Court also affirmed this Court's decision upholding the validity of the corporate shares tax and the related exemption provisions. *St. Ledger v. Commonwealth,* Ky., 912 S.W.2d 34 (1995), *vacated,* —— U.S. ——, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996). Respondents then sought review in the United States Supreme Court, which vacated the Kentucky Supreme Court's 1995 decision and remanded to that Court for reconsideration in light of an intervening opinion, *Fulton Corp. v. Faulkner,* 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996). On remand, in January 1997, the Kentucky Supreme Court held KRS 136.030(1), the exemption statute, unconstitutional on Commerce Clause grounds and concluded it was necessary to strike the "entire Corporate Shares Tax scheme" to avoid double taxation. *St. Ledger v. Commonwealth,* Ky., 942 S.W.2d 893, 897 (1997). In that opinion, the Court also addressed the extent to which refunds would be available retroactively and whether the Commonwealth would be liable for attorneys' fees under KRS 453.260 or 42 U.S.C. § 1988. With respect to the latter question, the Court ruled that because Respondents had "had an adequate remedy under Kentucky law for their objections to the [corporate shares] tax ...," and because the Cabinet's defense of that tax had been substantially justified, Respondents were not entitled to recover attorneys' fees from the Commonwealth.

Respondents thereupon filed a petition for rehearing. Their petition focused on the retroactivity issue, but it also included a request pursuant to CR 76.32(1)(c) for the Court to amend its opinion with respect to attorneys' fees by directing the trial court to proceed on remand in accord with KRS 412.070 and cases awarding fees from a "common fund." KRS 412.070 provides for an allowance of fees and costs from a recovered fund "if one or more of ... the parties in interest has prosecuted for the benefit of others interest-

ed with him and has been to trouble and expense in that connection." The Cabinet opposed the Respondents' petition for a modification of the Court's order on three grounds including the fact that the trial court had not yet considered the common fund fee question pursuant to KRS 412.070. By order entered April 24, 1997, our Supreme Court summarily denied Respondents' petition for rehearing, although Justices Cooper and Graves indicated that they "would award attorneys' fees." The order contains no reference to either KRS 453.260 pertaining to fees from the Commonwealth or KRS 412.070 regarding fees from the common fund.

The Supreme Court's opinion having become final, the case was remanded to the Jefferson Circuit Court. Soon thereafter, on May 12, 1997, Respondents' attorneys, through counsel, apprised the Cabinet of their claim to a fee of six percent (6%) of each taxpayer's refund. They proposed that the Cabinet withhold this percentage from each refund pending the trial court's ruling. The Cabinet replied that, in the absence of a court order, it was not authorized to withhold any amount from taxpayers' refunds and that in light of its duty to issue refunds promptly and to minimize its potential liability for interest, it intended to begin distributing refunds in early June 1997. The Cabinet also advised Respondents' counsel of its belief that the Supreme Court had precluded the trial court from awarding fees from the common fund.

On June 2, 1997, Respondents' counsel moved the trial court for an injunction pursuant to CR 65.04 and the trial court conducted a hearing on June 10, 1997. The evidence at that hearing revealed that the Cabinet had not printed any refund checks but was prepared to process a "first wave" of refunds totalling approximately $27 million and payable to approximately 30,000 taxpayers. At the conclusion of the hearing, the trial court found that counsel are entitled to collect their fee from the common fund, that their right would be impaired if refunds were distributed before the fee issue is fully decided, and that a short delay in the distribution of refunds while it determined how best to compensate the attorneys whose seven years of

work made the refunds possible, was justified. Accordingly, the trial court granted the temporary injunction, ordered a $25,000 surety bond, and scheduled a June 25, 1997 hearing on the reasonableness of counsel's claimed six-percent (6%) fee. On June 13, 1997, the Cabinet filed the motion now before us to dissolve the temporary injunction.

### STANDING

■ We note, preliminarily, that Respondents' counsel challenge the Cabinet's standing to contest their fee and the proposed arrangements for its payment. They argue that the Cabinet has become merely a stakeholder of the monies due to be refunded as a result of this litigation and thus that it does not have a sufficient interest in the matter to invoke the courts' jurisdiction. We disagree with counsels' characterization of the Cabinet's interest. The issue before the trial court is not simply the determination of a reasonable fee, but also whether the Cabinet may be ordered to facilitate the collection thereof. The Cabinet contends that counsels' proposed fee arrangements will burden it with administrative expenses and expose it to the risk of significant interest expense. The Cabinet's interest in avoiding these alleged hardships provides it with the standing necessary to contest the temporary injunction. *See generally Louisville v. Stock Yards Bank & Trust,* Ky., 843 S.W.2d 327 (1992).

### THE PROPRIETY OF INJUNCTIVE RELIEF

As all parties have acknowledged, injunctive relief under CR 65.04 is an equitable remedy addressed to the trial court's sound discretion. "Unless a trial court has abused that discretion, this Court has no power to set aside the order below." *Maupin v. Stansbury,* Ky., 575 S.W.2d 695, 698 (1978).

CR 65.04 requires a movant for injunctive relief to show clearly, by suitable evidence, that his or her right has been or will be violated by the adverse party and that without the requested relief he or she will suffer irreparable injury. In construing the rule, our Supreme Court held:

[A]pplications for temporary injunctive relief should be viewed on three levels. First, the trial court should determine whether plaintiff has complied with CR 65.04 by showing irreparable injury. This is a mandatory prerequisite to the issuance of any injunction. Secondly, the trial court should weigh the various equities involved. Although not an exclusive list, the court should consider such things as possible detriment to the public interest, harm to the defendant, and whether the injunction will merely preserve the status quo. Finally, the complaint should be evaluated to see whether a substantial question has been presented. If the party requesting relief has shown a probability of irreparable injury, presented a substantial question as to the merits, and the equities are in favor of issuance, the temporary injunction should be awarded.

*Maupin v. Stansbury,* 575 S.W.2d at 699.

Logically, we look first at the "substantial question" factor and Respondents' counsels' asserted right to collect fees as a percentage of the total pool of refunds. Counsel claims that KRS 412.070 and cases providing for fees from the total fund recovered support the procedure sought in this case, and that no alternative procedure adequately protects their undisputed right to a fee. The Cabinet has not contested the general applicability of KRS 412.070 to situations similar to this one. Rather, the Cabinet argues that because our Supreme Court denied Respondents' petition for rehearing wherein KRS 412.070 and the common fund theory were raised, the trial court's consideration of the issue is foreclosed.

■ The pertinent portion of the Supreme Court's April 1997 order is as follows:

Appellants' petition for rehearing is denied....All concur except that Cooper and Graves, JJ., would award attorneys' fees.

The Cabinet maintains that Justices Cooper and Graves's willingness to order that attorney's fees be paid establishes that the common fund theory argued by Respondents was rejected by the majority of the Court. We disagree. All parties acknowledge that KRS 412.070 and the common fund theory had not been addressed by the trial court and had

not previously been a disputed issue on appeal. The only attorneys' fee issue to that date was whether the Commonwealth should pay the fees pursuant to KRS 453.260. The Supreme Court's April 24, 1997 Order did allow the filing of a Bystander's Bill proposed by the Respondents which reflected that counsel for the Cabinet at oral arguments on December 11, 1996 had stated that the Supreme Court "need not worry whether the class counsel would be paid if [the] request under KRS 453.260 were rejected because [the] Revenue Cabinet would pay attorneys' fees from the refunds ....and .... 'that is how we have done it in the past.'" Bystanders Bill at 2. This comment followed the position taken by the Cabinet in its brief on remand that a common fund fee recovery was an available alternative to the "fees from the Commonwealth" approach then in dispute. Moreover, the Cabinet maintained in a March 10, 1997 filing with the Supreme Court that "counsel's request is plainly premature because the 'common fund doctrine' is a matter for the trial court to decide...." Revenue Cabinet's Response to Petition for Rehearing at 9. Thus, the Cabinet not only broached the subject of a common fund recovery as a viable alternative in its brief and oral argument but months later, during the petition for rehearing process, fully anticipated that the common fund fee award was still a "live" issue to be addressed in the trial court.

The parties' expectations aside, the appellate rules establish that the "new" common fund issue could not have been addressed on the rehearing sought by Respondents. A modification or extension of an opinion on a petition for rehearing, as requested by Respondents pursuant to CR 76.32(1)(c), is available only "when it is desired to point out and have corrected any inaccuracies in statements of law or fact contained in an opinion of the court, or *to extend the opinion to cover matters in issue not discussed therein,* and the result reached in the opinion is not questioned ...." (emphasis supplied). Clearly, the common fund theory was not properly before the Supreme Court under those limit-

ed provisions for rehearing because it was not a "matter in issue" that could have been addressed in the Court's January 1997 opinion. Accordingly, we do not believe the Supreme Court has addressed the availability of the common fund procedure for awarding attorneys' fees in this case. Moreover, based on our reading of KRS 412.070 and given the Cabinet's previous acknowledgement of the appropriateness of that method of awarding fees, we cannot say that the trial court abused its discretion in concluding that Respondent's counsel was entitled to fees from the common fund. A substantial question certainly has been raised.

■ We turn now to the issue of irreparable injury. Respondents' counsel argue that the injunction is necessary because the distribution of any refunds without a reservation for potential attorneys' fees would result in irreparable harm to the taxpayers and their counsel. We agree. If this first wave[1] of refunds is made without reservation, one group of the taxpayer class potentially will escape any responsibility for their portion of an eventual attorneys' fee award. The Respondents' counsel could recover fees from this sub-class of "fully refunded" taxpayers only if the taxpayers are individually billed and either voluntarily pay or are forced to pay following a successful collection suit. This is a totally untenable result for all concerned. The taxpayers receiving refunds in this first wave are entitled to some certainty regarding their entitlement to the refund check they receive and to freedom from the unexpected attorneys' bills which the Cabinet offers as a solution. The remaining taxpayers are entitled to know that each member of the class bore his or her fair share of responsibility for attorneys' fees. The Respondents' counsel are entitled to the orderly process specifically provided in KRS 412.070; as the trial court found, it is "inappropriate" and "unreasonable" to force them to track down and individually bill 30,000 refund recipients. Finally, the judicial system has a distinct interest in avoiding the potential for thousands of collection suits spawned by a

---

1. The Cabinet has represented that it is presently prepared to distribute some $27 million to approximately 30,000 refund recipients. These fig-

ures constitute significant portions of both the total anticipated refund and the total number of recipients.

hasty refund distribution. While allowing some refunds to be made without a reservation for attorneys' fees would produce much confusion and an unnecessary burden for the taxpayers and the courts, for the attorneys seeking compensation it would constitute irreparable harm. Quite clearly, a significant portion of the fees would never be recovered. In short, the trial court did not abuse its discretion in finding immediate and irreparable harm.

The last factor concerns the equities involved, including the public interest and the harm to the party enjoined. Our previous comments on the irreparable harm created by a refund process which would potentially treat taxpayers differently based on when their refund was processed are equally pertinent to this third consideration. Where, through the considerable efforts of class representatives and their attorneys, refunds of unconstitutional taxes are secured, it is only equitable that each taxpayer pay his or her proportionate share of the attorneys' fees. The public interest is best served by insuring that this result can be achieved. If attorneys' fees are not provided for before refund checks are mailed, some taxpayers will dodge their responsibilities and the attorneys will then have to decide whether collection suits are justified. Taxpayers receiving larger refunds will be pursued while those with smaller refunds most probably will not because the cost of collection would be prohibitive. Neither this arbitrary approach to who pays nor the resulting rash of collection suits is in the public interest. Additionally, it is not in the public interest for class representatives and their counsel to be at risk on the fees issue for it will discourage similar class action suits which successfully vindicate the rights of many individuals. The Cabinet's concerns about the cost of reprogramming its computers to distribute 94% of each refund instead of 100% are entitled to little weight when they have long known that a common fund fee would be sought, and the public interest so clearly favors reserving a portion of each refund until the attorneys' fee issue is decided.

Finally, the Cabinet has argued that there is some urgency in beginning the refund process because interest is accumulating at the rate of nine percent (9%) on the Commonwealth's refund obligations. This interest obligation is the Cabinet's primary focus on the public interest prong of the *Maupin* analysis and is also the basis for its argument that the $25,000 surety bond is inadequate. While this Court encourages a prompt refund process, we also believe that the refund process should be accurate. The proper distribution of state funds is a matter of significant concern to all of Kentucky's citizens. It does not appear to this Court that Kentucky law requires the substantial interest on refunds of unconstitutional taxes which the Revenue Cabinet currently contemplates paying.

As our Supreme Court noted in the most recent opinion in this case, 942 S.W.2d at 900, the refund of unconstitutional taxes is accomplished under KRS 134.590—a statute which does not authorize the payment of interest. By contrast KRS 134.580, the statute applicable to all refunds *except* those of ad valorem and unconstitutional taxes, does authorize interest. KRS 134.580 is specifically applicable to an "overpayment" which is defined in Section 1(b) as follows: " 'Overpayment' or 'payment where no tax was due' means the tax liability under the terms of the applicable statute without reference to the constitutionality of the statute." Sections 5 and 6 of KRS 134.580 make it abundantly clear that the statute does not apply to unconstitutional taxes, refunds of which can only be made "to the extent provided by KRS 134.590 and by the statute held unconstitutional." Moreover, KRS 131.183, the tax interest rate statute invoked by the Cabinet and Respondents' counsel is applicable only to "any overpayment" of taxes—a term which does not encompass the refunds at issue here. Although the applicable interest rate is not before this Court except as it relates to the adequacy of the bond and to the public interest regarding the urgency for payment, we are not persuaded that Kentucky law requires nine percent (9%) interest (the tax interest rate as calculated by the Revenue Cabinet under KRS 131.183) from the date the intangible taxes being refunded were paid.

The Respondents' counsel have also argued that the Commonwealth must, as a

matter of due process, provide "meaningful backward-looking relief" as that concept is defined by the United States Supreme Court in *McKesson Corp. v. Div. of Alcoholic Beverages,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). With this, we agree. On remand, however, we urge the trial court to carefully consider whether interest at a nine percent (9%) rate (beginning in some cases in 1988 and totalling over $30 million by the Revenue Cabinet's own estimates) is necessary to comply with the dictates of *McKesson,* particularly because the intangible tax was not held unconstitutional until January 1997 based on the February 1996 United States Supreme Court decision in *Fulton Corp. v. Faulkner, supra.* The relief accorded to the class of intangible property taxpayers must be prompt and comply with due process, but it should not be at the expense of the much larger population of Kentucky taxpayers generally who also fund the State Treasury.

In light of the foregoing, the trial court did not abuse its discretion in concluding that the public interest was served by entry of the injunction. We emphasize that in denying interlocutory relief this Court is not expressing an opinion on the propriety of the six percent (6%) fee sought by Respondents' counsel. That matter must be addressed to the trial court in the first instance.

Lastly, the $25,000 bond ordered by the court is not inadequate. Implementing the refund of taxes held unconstitutional is part of the Cabinet's administrative function. If the court orders that a percentage of each refund be withheld to satisfy attorneys' fees, the Cabinet can and should adjust its computer programming accordingly. The Cabinet has offered no precedent for shifting this cost to the counsel who are awarded fees.

For the reasons stated, the Cabinet's motion for interlocutory relief from the June 10, 1997 temporary injunction order of the Jefferson Circuit Court is DENIED. This order is effective upon signature without necessity of concurrent entry by the Clerk of the Court.

All concur.