**CITY OF SOMERSET, Appellant,**

v.

**Peggy J. BELL; Lewis Blankenship; Charlie Mac Corp.; William Clouse; Brian Cooke; David Cothran; Cumberland Lake Shell; Cumberland Lumber Company; Corliss Davis; Robert Arlene Ford; Jerry Donna Foster; Grand Central Apartments; Doug Hail; Rick Lisa Halloran; Hartco Hardware Flooring, LP; Steve Hieronymus; Timothy L. Hughes; Hugh Hurst; J M Realty; Francis Nancy Kapfhammer; Robert Lankford; McGlothlin Todd Construction; Nationwide Life Insurance; Steve**

Parrott; Gary Tamara Pence; Charles F. Pierce; Rals Concrete Materials, Inc.; Fred A. Schultz; Robert Setser; Somerset Country Club, Inc.; Helen Stanton; Stoneybrook Apartments; William Stringer; Tradeway, Inc.; James M. Tucker; CV Carolyn Warner; Gerald Weigel, Jr.; Joseph Weigel; Michelle V. Wilson; Woodstick Holding Company, Inc.; Michael Cress; James R. Foster; Donald Moss; James Cinda Crea; David Dorsey; John B. Hail; Doyle Hall; Roger Linda Harness; Joe Jackson; Lewis Marcum; Harold Megargel; Somerset Cycle Center; South Midway Supply, Inc.; Sheila Thompson; Tractor Supply Co.; Am Con Construction Products, Inc.; Kirby Kim Cordell; and Spicewood Services, Appellees,

and

Reggie Stringer and All other Persons Similarly Situated, Cross–Appellants,

v.

City of Somerset, Kentucky, Cross–Appellee.

Nos. 2003–CA–001522–MR, 2003–CA–001523–MR.

Court of Appeals of Kentucky.

Jan. 21, 2005.

Joe L. Travis, Daniel G. Yeast, Somerset, KY, for appellant.

D. Bruce Orwin, Somerset, KY, for appellees.

Timothy Eifler Louisville, KY, Amicus Curiae Brief on Behalf of Eric and Connie Light.

Before BUCKINGHAM and MINTON, Judges; MILLER, Senior Judge.[1]

## OPINION

MINTON, Judge.

A group of taxpayers, living in an area annexed by the City of Somerset, brought a class action lawsuit in the Pulaski Circuit Court, alleging that the City had improperly collected ad valorem property taxes from them. The circuit court agreed, concluding that the City's assessment and levy of taxes violated statutory requirements. Later, the court concluded that although the taxpayers were legally entitled to a refund, they were precluded from recovering funds in a class action lawsuit. The Court also concluded that the taxpayers had failed to exhaust administrative remedies. Finally, the court held that the

---

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

taxpayers were not entitled to interest on their refund.

On appeal, the City argues that the taxpayers' class was erroneously certified; that the taxpayers are not owed a refund but, rather, that the City itself deserves compensation for the value of the benefits it conferred on the taxpayers; and that the taxpayers' motion for a protective order to prevent further discovery was erroneously granted. On cross-appeal, the taxpayers assert that their refund claim is not subject to administrative remedies and that they are owed interest on their refund. Because we hold that the City is liable to the taxpayers for refunds without interest and that the City is not eligible for compensation for the value of benefits conferred on the taxpayers, we affirm, in part. Furthermore, because we conclude that the class was properly certified and that the taxpayers' claims are not subject to exhaustion of administrative remedies, we reverse and remand, in part.

### PROCEDURAL HISTORY

In 1995, each of the taxpayers' property was annexed into the city limits of Somerset at the taxpayers' request. When land is annexed into a city, KRS[2] 81A.470 and KRS 81A.475 require the city responsible for the annexation to file accurate maps of the annexed area within sixty days. KRS 81A.470 provides as follows:

(1) If the limits of a city are enlarged or reduced, the city shall, within sixty (60) days of the enlargement or reduction, cause an accurate map and description of the annexed, transferred, or severed area, together with a copy of the ordinance duly certified, to be recorded in the office of the county clerk of the county or counties in which the city is located,

in the office of the Secretary of State, and in the Department for Local Government. . . .

(2) No city which has annexed unincorporated or accepted transfer of incorporated territory may levy any tax upon the residents or property within the annexed or transferred area until the city has complied with the provisions of subsection (1) of this section, and of KRS 81A.475.

KRS 81A.475 further provides:

If any city annexes any unincorporated area ... it shall be the duty of the legislative body of the city to provide within sixty (60) days, to the county clerk of the county in which the city is located, a map clearly delineating the boundaries of the area affected along with a list of the names and addresses of those property owners and registered voters who reside in the area.

In an April 8, 2002, order granting partial summary judgment to the taxpayers, the circuit court concluded that the City had failed to file the proper maps as required by KRS 81A.470 and 81A.475. Therefore, the assessment of taxes against the taxpayers living in the annexed area was held improper.

Despite its determination that the taxpayers were owed a refund, the court found the statute relied upon by the taxpayers inapplicable to the payment of city ad valorem taxes. Since no other specific statute regarding the proper means of refund had been brought to its attention, the court left open the issue of the taxpayers' remedy.

The April 8, 2002, order also dismissed a counterclaim filed by the City. The City had sought to recover the value of the benefits that the taxpayers had received as a result of the annexation of their proper-

---

**2.** Kentucky Revised Statutes.

ty. But the court held that the City's claim was without merit since it was not supported in any way by law.

Finally, the order granted the taxpayers a protective order to prevent the City from deposing the affected property owners. The court reasoned that the only purpose for the City's request for pursuing discovery was to develop its counterclaim for the alleged value of benefits conferred upon the taxpayers. Since the counterclaim had been dismissed, discovery was deemed unnecessary. Therefore, the Court granted the taxpayers' motion.

The case was continued on the docket of the Pulaski Circuit Court pending further proceedings to determine the remedy available to the taxpayers. Finally, on June 18, 2003, the court issued an order addressing the taxpayers' remedies. The court reaffirmed its earlier ruling regarding the City's violation of KRS 81A.470 and 81A.475. But the court concluded that the relief requested by the taxpayers under KRS 134.590 could not be granted because the taxpayers had failed to exhaust certain administrative remedies.

The court also held that the class of taxpayers had been improperly certified because precedent dictated that an application for a tax refund must be brought individually. The court further concluded that since the entitlement-to-refund issue had been fully and fairly litigated, the individual taxpayers could apply for a refund without having to re-argue the issues of law.

Finally, the court held that the taxpayers were not eligible for interest on their refunds and that the City's argument regarding the inequitable benefit received by the taxpayers was baseless. The court made the order final and appealable and this appeal followed.

## THE CITY'S APPEAL

The City makes four main arguments: first, the court erroneously certified the taxpayers' class; second, a refund of taxes is unfair because the taxpayers requested annexation; third, the circuit court erroneously dismissed the City's counterclaim for the value of services; and, fourth, the court erroneously granted the taxpayers' protective order preventing the City from proceeding with discovery. We disagree with the City on all four points.

■ The City's first argument is that the circuit court improperly certified the taxpayers as a class for the purposes of this lawsuit. In support of its argument, the City cites KRS 134.590, *Bischoff v. City of Newport,*[3] and *Board of Education of Fayette County v. Taulbee.*[4] Relying on *Swiss Oil Corporation v. Shanks,*[5] both *Bischoff* and *Taulbee* held that a class action is not available for tax refunds;[6] rather, taxpayers must bring actions for refunds individually. In *Swiss Oil,* the Court interpreted the language of KS[7] 163, the predecessor to KRS 134.590(6), which stated a taxpayer may not receive a refund for taxes improperly paid "unless application be made *in each case* within two years from the time when such payment was made." The *Swiss Oil* court held that the term "in each case" necessarily implied:

> [T]hat the application for a refund must be made by the party entitled thereto, or some one authorized by him to make

**3.** 733 S.W.2d 762 (Ky.App.1987).

**4.** 706 S.W.2d 827 (Ky.1986).

**5.** 208 Ky. 64, 270 S.W. 478 (1925).

**6.** *Bischoff, supra* at 763; *Taulbee, supra* at 828.

**7.** Kentucky Statutes.

such demand, and that each claim shall be made separately. It is therefore clear that the demand made by the plaintiff upon the auditor for the aggregate claimed to be due it, and others for whom it had no authority to act, was not such a demand as the statute contemplates.[8]

When *Bischoff* and *Taulbee* were decided, the language of KRS 134.590(6) remained similar to that of KS 163. The applicable portion of the statute read, "[n]o refund shall be made unless application is made *in each case* within two (2) years from the date payment was made."[9] But, in 1996, the General Assembly amended KRS 134.590(6).[10] The pertinent section of the statute now reads, "[n]o refund shall be made unless an application is made within two (2) years from the date payment was made." In the amended version of the statute, the legislature removed the phrase "in each case." The taxpayers argue that the omission of these words reflects the General Assembly's intent that a class action is now an appropriate vehicle for relief in tax refund cases. Since there has been no case law since the 1996 amendment interpreting the effect of this omission, we are compelled to address the issue.

 The interpretation of a statute is a question of law.[11] For that reason, it is suitably before this Court. When interpreting a statute, "it is appropriate to consider the contemporaneous facts and circumstances which shed intelligible light on the intention of the legislative body."[12] When a statute is amended, the presumption is that the legislature intended to change the law.[13] Our Supreme Court has held that "[i]n determining legislative intent certain presumptions are indulged. One of these is that ... where a clause in an old enactment is omitted from the new one, it is to be inferred that the Legislature intended that the omitted clause should no longer be the law."[14] Likewise:

[w]here a statute is amended or re-enacted in different language, it will not be presumed that the difference between the two statutes was due to oversight or inadvertence on the part of the Legislature. On the contrary, it will be presumed that the language was intentionally changed for the purpose of effecting a change in the law itself.[15]

We infer from the changes made to the whole of KRS 134.590 that the General Assembly meant to change existing law. In both section (6) of the statute, which is applicable to taxes imposed by cities and local municipalities, and section (2), which is applicable to state taxes, the legislature altered the language of the statute by deleting the phrase "in each case." Considering the historical significance of that phrase, beginning in the *Swiss Oil* case, we must conclude that the intent of the legislature was to amend that portion of the statute limiting refunds for ad valorem taxes to individual claims. Even if the

---

8. *Swiss Oil, supra* at 478–479.

9. KRS 134.590(6) (emphasis added).

10. 1996 Ky. Acts 344, § 2.

11. *Kenton County Fiscal Court v. Elfers,* 981 S.W.2d 553, 556 (Ky.App.1998).

12. *Id.* at 558, *quoting Mitchell v. Kentucky Farm Bureau Mutual Insurance Company,* 927 S.W.2d 343, 346 (Ky.1996).

13. *Whitley County Board of Education v. Meadors,* 444 S.W.2d 890, 891 (Ky.1969).

14. *Inland Steel Co. v. Hall,* 245 S.W.2d 437 (Ky.1952).

15. *Eversole v. Eversole,* 169 Ky. 793, 185 S.W. 487, 489 (1916).

change was unintentional, its effect was to alter key language of a statute, which, for some seventy years before the amendment, had been interpreted by the courts to limit tax refunds to individual claims.

We hold that the General Assembly omitted the phrase "in each case" from KRS 134.590 with the intent to change the law. The effect was to alter the statute to permit taxpayers requesting a refund for an ad valorem tax to bring the claim as a class action. Therefore, certification of the taxpayers class action was proper.

■ The second and third arguments raised by the City are interrelated and, therefore, can be discussed as one. The City argues that since the taxpayers requested the annexation, it would be inequitable to refund the taxes simply because the City made a clerical error by failing to file the appropriate maps. Specifically, the City claims if the taxes are refunded, the taxpayers should be liable to the City for the value of benefits received as a result of the annexation of their property. We believe these arguments to be completely misplaced, and we adopt the language used by the circuit court in dismissing the City's claim:

> The Defendant, City of Somerset, had argued that rules of equity should be applied and that the Plaintiff, as well as others similarly situated, should not be entitled to refunds of the improperly levied tax because they received certain benefits which accrued to property owners in areas annexed to the City of Somerset. There is no place in this litigation for that kind of analysis. The Defendant argues that persons in the annexed area involved in this case received the benefit of city police protection, city fire protection, gas and water utilities at rates paid by city property owners, as well as other tangible and intangible benefits of city residents. A

fair and equitable tax system can exist only when the laws enacted for such are properly followed. No community could withstand a system of taxation which allowed for the collection of taxes, or the refunding of improperly collected taxes, based upon the degree to which one benefitted [sic] from government services. To do such would enable every taxpayer to, in effect, have his or her own tax rate, based upon their degree of satisfaction with the government. Presumably, every citizen achieves a benefit from the government. We would not argue that those who have overpaid their income taxes should forego the refund which they are due under the income tax laws simply because they enjoyed the benefit of all that state and local government can do for them. If equity is to be taken into account, then we must judge not only the benefits achieved by city residence, but also we would have to reckon with the burdens and dissatisfaction of some taxpayers with city services. Therefore, the Court concludes that the City is entitled to no relief on account of the fact that it provided city services to the annexed area.

We affirm the circuit court's decision to dismiss these issues.

■ Finally, the City argues that the circuit court erroneously granted the taxpayers' motion for a protective order to prevent discovery. The City wanted to depose the taxpayers to discover what benefits they received as a result of the annexation.

Because the only purpose of the discovery was to bolster the City's counterclaim, the grant of the protective order was proper. Again, we quote from the circuit court's order: "The only relevance for such an inquiry relates to the City's counterclaim to recover from such persons the value of the benefits they received. As

much as the Court has concluded that the Defendant's counterclaim must be dismissed, the information sought by that discovery has become immaterial." Therefore, the decision of the circuit court granting the taxpayers' motion for a protective order is affirmed.

### THE TAXPAYERS' CROSS–APPEAL

The taxpayers argue, first, that KRS 131.110 does not apply to a refund of ad valorem taxes and, second, that they are eligible for interest on the taxes they paid. We agree with the taxpayers' first contention. But we disagree with their second assertion because interest is not payable on a refund of ad valorem taxes.

The City did not file a brief addressing the taxpayers' cross-appeal. Counsel for the City assured us at oral argument of this case that the City's original brief addressed the issues raised in the cross-appeal. But upon further inspection of the City's brief, we cannot find any mention of the taxpayers' claims. Therefore, we may assume that the City concedes these issues; nonetheless, for purposes of clarity and in the interest of diligence, we will discuss the taxpayers' arguments fully.

The first argument regarding the applicability of KRS 131.110 is supported by our recent decision in *Light v. City of Louisville*.[16] In *Light*, the appellants challenged a tax rate fixed by the City of Louisville in levying ad valorem property taxes. Appellants argued that the City failed to meet certain prerequisites before increasing the tax rate. Consequently, they sought reimbursement from the city for the taxes paid.

The trial court dismissed the action, claiming the Kentucky Board of Tax Appeals (KBTA) had jurisdiction over the case. The trial court stated that the appellants would first be required to exhaust their administrative remedies under KRS 131.110 before further pursuing the action.

We reversed, holding that the taxpayers exhausted their administrative remedies by filing a claim requesting a refund from the city. We cited KRS 131.340(1), which vests the KBTA with "exclusive jurisdiction to hear and determine appeals from final rulings, orders, and determinations of *any agency of state or county government affecting revenue and taxation*." [17] Recognizing that the city is not an arm of state or county government, the Court stated:

> We conclude that the General Assembly intended the Kentucky Board of Tax Appeals to have jurisdiction only over issues involving revenue and taxation matters to be addressed by an administrative arm of central state government. By this we mean the administration of taxes such as the state ad valorem tax, the income tax, the corporations' license tax, the sales and use tax, and selective excise taxes. These are the subject matter of KRS Chapter 131–143A.[18]

We held that although various provisions of the statutes referred to city tax rates and revenues, "those references, without more, [did] not amount to the addressing of city revenue and taxation matters 'by an administrative arm of central state government.'" [19] We further held:

> Although it is true that all taxing power originally emanates from the state, the exercise of such power which has been

---

16. 93 S.W.3d 696, 698 (Ky.App.2002).

17. KRS 131.340(1) (emphasis added).

18. *Light,* 93 S.W.3d at 697–698, *quoting Board of Education of Russellville Independent*

Schools v. Logan Aluminum, Inc., 764 S.W.2d 75, 78 (Ky.1989).

19. *Id.* at 698.

granted for local purposes falls "within the discretion of the city governing authority." Simply put, it is clear that the city is not an agency "serviced by the Department of Revenue" for purposes of local ad valorem real property taxes, and that such taxes do not come within the ambit of "the subject matter of KRS Chapter 131–143."[20]

Finally, we stated:

Most pertinent to this appeal is KRS 134.590(6), which permits the refund of ad valorem taxes only if they are unconstitutional, or if "the taxpayer has properly followed the administrative remedy procedures established through the protest provisions of KRS 131.110, the appeal provisions of KRS 133.120, the correction provisions of KRS 133.110, and 133.130, or other administrative remedy procedures." Although the city argues that a taxpayer's appeal from an administrative denial of a refund must be taken to the KBTA rather than to the circuit court, our review of the statutes cited in KRS 134.590(6) establishes that each of those statutes refers to disputes concerning PVA assessments rather than to disputes involving city tax rates. Hence, we conclude that there is no merit to the city's contention that KRS 134.590 expands the KBTA's jurisdiction to include appeals such as the one involved in the instant action.

We also conclude that the trial court erred by finding that the KBTA has jurisdiction over this dispute because the city's ad valorem tax is part of an integrated state tax system. Although a city which chooses to utilize PVA valuation assessments must adhere to certain steps before it may increase its ad valorem real property tax rate, the city sets that tax rate, and the tax money collected is retained by the city and does not enter the state revenue system. Moreover, although KRS 133.120(10) specifically requires appeals from PVA assessments to be taken to the KBTA, the method for appealing city ad valorem tax rates is not mentioned in KRS Chapters 131–143. Given this fact, we are simply not convinced that the city's ad valorem real property tax rate is part of our integrated state tax system, or that this action contesting such rates falls within the KBTA's jurisdiction. We hold, therefore, that appellants fully exhausted their administrative remedies by seeking a refund of the property taxes paid from the city, and that the trial court erred by dismissing this action on the ground that the KBTA had exclusive jurisdiction over this dispute.[21]

Thus, we ultimately decided that the appellants' claim for a refund of local ad valorem property taxes, based upon the fixing of an improper tax rate, was not subject to the administrative remedy procedure listed in KRS 134.590.

We believe *Light* to control this case. Although we recognize that the taxpayers in this case, unlike the appellants in *Light*, are not challenging the City's tax rate, we agree with the assessment that "the statutes cited in KRS 134.590(6) . . . refer [ ] to disputes concerning PVA assessments. . . ."[22] Since the dispute in the instant case does not concern the City's PVA assessment but, rather, the City's violation of KRS 81A.470, we believe the same analysis iterated in *Light* is applicable here. The refund requested in this case does not implicate the administrative remedy procedures required by KRS 134.590(6). The refund is based solely on

---

**20.** *Id.* (citations omitted).

**21.** *Id.* at 698–699.

**22.** *Id.* at 698.

the improper assessment of a local tax and, therefore, falls outside the scope of the KBTA. We agree with *Light* that a city's ad valorem property tax is not part of the integrated state tax system. As such, we believe the taxpayers exhausted their administrative remedies when the request for a refund was filed. The circuit court erred when it held the taxpayers must further exhaust the administrative remedies cited in KRS 134.590(6) before receiving a refund. Therefore, we reverse the decision of the circuit court on this issue and remand for a determination of the amount of refund that is owed each of the taxpayers in this suit.

 The taxpayers' second argument that they are eligible for interest on the taxes they paid is mistaken. The general rule is that "unless authorized by statutes, interest is not collectible on taxes due the state, county, or subdivision thereof, *nor on a refund thereof.*" [23] Although the taxpayers argued in their brief that KRS 131.183 applies to their refund, counsel conceded during oral arguments that the statute does not, in fact, apply. However, the taxpayers still argue that KRS 360.010 is applicable to their claim.

We must disagree. KRS 360.010 applies to the legal interest rate applicable to bank loans, not to tax refunds. To apply the statute to this case would be a stretch we are not willing to make.

The only other statute that could provide a basis for the taxpayers' recovery of interest would be KRS 134.590, the statute authorizing the refund of local ad valorem taxes. But, nothing in that statute expressly states that interest is recoverable. In *Commonwealth of Kentucky, Revenue Cabinet v. St. Ledger,*[24] this Court addressed the repayment of unconstitutional taxes. We noted that KRS 134.590, the statute applicable to unconstitutional taxes, "does not authorize the payment of interest. By contrast, KRS 134.580, the statute applicable to all refunds *except* those of ad valorem and unconstitutional taxes, does authorize interest." [25] Since the applicable statute did not expressly authorize the payment of interest, we held that the taxpayers were not entitled to interest on their refunds.

The same analysis applies here as in *St. Ledger.* KRS 134.590 is equally applicable to the refund of ad valorem taxes as it is to unconstitutional taxes. The statute does not explicitly allow for interest on refunds of ad valorem taxes. Therefore, we cannot infer intent to require the payment of interest. We reject the taxpayers' claim that they are owed interest on their refunds, and we affirm the circuit court's denial of this motion.

### DISPOSITION

For the reasons discussed in this opinion:

1) We affirm the circuit court's grant of summary judgment for the Appellees/Cross–Appellants on the issue of the Appellant/Cross–Appellee's improper levy and collection of taxes;

2) We reverse the circuit court's denial of the Appellees/Cross–Appellants' right to a tax refund, and we remand the case to the circuit court for further proceedings aimed at awarding such refund; and

3) We affirm the circuit court's ruling on all other issues.

23. *Commonwealth ex rel. Allphin v. St. Matthews Gas & Elec. Shop, Inc.,* 286 S.W.2d 911, 912 (Ky.1956) (emphasis added).

24. 955 S.W.2d 539, 544 (Ky.App.1997).

25. *Id.* at 544.

MILLER, SENIOR JUDGE, CONCURS.

BUCKINGHAM, JUDGE, CONCURS, IN PART, AND DISSENTS, IN PART.

BUCKINGHAM, Judge, concurring in part and dissenting in part.

I concur with most portions of the majority opinion. However, I respectfully dissent from the portion of the opinion allowing the taxpayers to seek refunds as a part of their class action suit.

The circuit court certified this case as a class action and determined that the City had not been authorized to collect ad valorem taxes on the taxpayers' real property. But the circuit court did not allow the taxpayers to seek refunds as a class. Citing the *Taulbee* and *Swiss Oil* cases, the court concluded that class action relief was not available for the refund of taxes.[26]

As noted by the majority, the *Taulbee* and *Bischoff* cases hold that "an action for a refund of taxes paid may not proceed as a class action." *Bischoff,* 733 S.W.2d at 763. This conclusion was reached by the *Taulbee* and *Bischoff* courts based on the emphasis in the *Swiss Oil* case on the words "in each case" as used in the predecessor statute to KRS 134.590(6). Because those three words were omitted when the statute was amended in 1996, the majority reasons that class action relief is now available for the refund of taxes. More specifically, the majority remands this case to the circuit court for further proceedings to award tax refunds to the members of the class. I believe the majority has erroneously resolved this issue.

First, assuming that the majority is correct that the removal of the words "in each

case" from the statute opened the door for class actions for tax refunds, that does not mean the circuit court in this case was required to allow the taxpayers to proceed in that manner. There is no right to litigate a claim as a class action, and CR[27] 23 provides only that the court *may* certify a class action if the plaintiffs satisfy the requirements of the rule. *See Southwestern Refining Co., Inc. v. Bernal,* 22 S.W.3d 425, 439 (Texas 2000). In fact, whether a class should be certified is a matter within the discretion of the trial court, and the trial court's decision is final absent an abuse of that discretion. *See Sowders v. Atkins,* 646 S.W.2d 344, 346 (Ky.1983). *See also* 32B AM.JUR.2D *Federal Courts* §§ 1821 and 2203 (1996). Assuming the majority was correct in its holding that the removal of the words from the statute by the legislature now authorizes class actions for tax refunds, then the case should be remanded for the circuit court to determine whether the class action should be maintained in this case based on the requirements in CR 23.

Second, the taxpayers could not seek refunds as a class in this case because not all members of the class met the jurisdictional amounts for maintaining an action in circuit court. The district courts have exclusive jurisdiction of amounts in controversy not exceeding $4,000. KRS 24A.120(1)(a). Therefore, the circuit courts have jurisdiction of amounts in controversy exceeding $4,000. *See* KRS 23A.010(1). In this case most of the individual claims for tax refunds were within the exclusive jurisdiction of the district court, although a few were within the jurisdiction of the circuit court.

---

26. The action by the circuit court in initially certifying the class and determining the validity of the tax but then not allowing the action for refunds to proceed by class action was proper. *See Bischoff,* 733 S.W.2d at 763. *See*

*also* 59 AM.JUR.2D *Parties* § 106 (2002), concerning de-certification of a class.

27. Kentucky Rules of Civil Procedure.

In *Lamar v. Office of Sheriff of Daviess County,* 669 S.W.2d 27 (Ky.App.1984), this court held that a class action could not be maintained where none of the individual claims was equal to or exceeded the statutory jurisdictional amount of the circuit court. *Id.* at 31. Although that case is distinguishable from this case since some members of the class in this case meet the jurisdictional requirements of the circuit court, the *Lamar* court relied on *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), a case involving similar facts from the U.S. Supreme Court under the applicable federal civil rule concerning class actions. In the *Zahn* case, the Supreme Court affirmed a ruling by a lower court refusing to permit a case to proceed as a class action. 414 U.S. at 302, 94 S.Ct. 505. The court reasoned that every member of the class must satisfy the jurisdictional amount before the case may proceed as a class action. *Id.* at 301, 94 S.Ct. 505. In short, I conclude that this court should have affirmed the trial court and not allowed the case to proceed as a class action for tax refunds since all members of the class did not meet the jurisdictional requirements for maintaining an action in circuit court.

Third, the class action should not have been allowed to proceed in this case because there is no indication that all members of the class had filed a claim for refund within two years from the date of the payment of the tax as required by KRS 134.590(6). "In a purported class action refund suit, all class members must have filed a refund claim, and the suit is not maintainable on the basis of the refund claim filed by the class representative." 35A AM.JUR.2D *Federal Tax Enforcement* § 966 (2001). As the Kentucky Supreme Court said in the *Taulbee* case, "KRS 134.590(6) is not self-executing. Application for refund must be made individ-

ually." *Id.* at 829. *See also McConnell v. United States,* 295 F.Supp. 605 (E.D.Tenn. 1969) *and Agron v. Illinois Bell Telephone Co.,* 325 F.Supp. 487, 488 (N.D.Ill.1970). Neither the circuit court nor this court may speculate whether all members of the class were jurisdictionally capable of bringing a refund action. *See Lipsett v. United States,* 37 F.R.D. 549, 552 (S.D.N.Y.1965). Like those members of the class who failed to meet the jurisdictional amount for filing their claim in the circuit court, those who failed to timely apply for a refund likewise are jurisdictionally prohibited from being members of the class.

Fourth, I disagree with the majority's opinion that the effect of the removal of the words "in each case" from KRS 134.590(6) was to alter the statute so as to permit taxpayers requesting refunds for ad valorem taxes to bring their claims by way of class action. KRS 134.590(6) does not relate to the manner in which a civil suit may be filed for tax refunds. Rather, the statute sets a two-year period of time within which one may apply for a refund. Eliminating the words "in each case" has no impact on whether taxpayers may proceed by class action to obtain refunds.

In short, Kentucky law does not allow a class action to seek tax refunds. *See Taulbee* and *Bischoff.* More importantly, a class action for tax refunds was properly denied in this case because numerous members of the class were jurisdictionally incapable of maintaining an action in circuit court. I would affirm the trial court on this issue.